UNITED STATES of America, Plaintiff,

v.

Ernesto SALSEDO, Rudolph Torres, Richard Montes, and Jose Buenrostro, Defendants.

No. Crim. S–79–123 LKK.

United States District Court, E. D. California.

Oct. 11, 1979.

Memorandum and Order on Plaintiff's Motion to Reconsider Oct. 18, 1979.

Herman Sillas, U. S. Atty., Julian G. Macias, Asst. U. S. Atty., Sacramento, Cal., for plaintiff.

Jerome Stanley, Stanley & Wing, Inc., Sacramento, Cal., for Salsedo.

Steven D. Bauer, Sacramento, Cal., for Torres.

Robert E. Hodge, Sacramento, Cal., for Buenrostro.

E. Richard Walker, Federal Defender, Robert M. Holley, Deputy Federal Defender, Sacramento, Cal., for Montes.

## MEMORANDUM AND ORDER

KARLTON, District Judge.

Defendants are accused of violation of 18 U.S.C. §§ 471 and 472. They assert that the stop of a car and the seizure of material from the car is unlawful. They have moved for the suppression of all evidence seized from the car. They also allege the material obtained pursuant to a "consent search" is the "fruit" of the allegedly unlawful conduct and, accordingly, they also seek its suppression. Three issues are ordinarily presented in warrantless search and seizure suppression motions—standing, reasonable and probable cause, and excuse of the warrant requirement.

■ The first problem faced by any defendant in moving for suppression is a demonstration of standing to raise the Fourth Amendment claims. ". . . Fourth Amendment rights are personal rights which, . . . may not be vicariously asserted." *Alderman v. U. S.* (1969) 394 U.S. 165, 174, 89 S.Ct. 961, 966-67, 22 L.Ed.2d 176.

■ The car was owned and operated by Defendant Buenrostro at the time of the stop, and thus he has standing to raise the issue of illegality (*Rakas v. Illinois* (1978) 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387). Each of the other defendants has filed an affidavit with the Court. In the affidavit each asserts an interest in a certain bag and its contents which were seized during the search of the automobile. Accordingly, they each appear to have standing. *United States v. Mazzelli* (9th Cir. 1979) 595 F.2d 1157.

■ Ordinarily, in a case of this kind after a defendant establishes standing, the court takes evidence to establish what information the government had at the time of the search and seizure. This is a factual issue. The court then makes a judgment as to the sufficiency of the information under Fourth Amendment standards.[1] Finally, since a warrantless search is prima facie unlawful, it must be justified by some excuse of the warrant requirements of the Fourth Amendment. *U. S. v. Chadwick* (1977) 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538. As shall appear, because of a refusal of the government to provide discovery, the Court has been unable to reach the merits of "probable cause" and "excuse of the warrant requirements" issues in this case.

During the course of the hearing, the government relied upon testimony of the Secret Service Agent in charge of the investigation. Upon cross-examination two facts emerged which give rise to various motions for discovery. Agent Hamilton acknowledged that the government was in possession of notes taken by another agent relating to the latter agent's conversations with Defendant Torres. This fact gave rise to a motion by Defendant Torres for production of the notes relative to the statements made by Torres during the conversation. Hamilton also acknowledged that he had reviewed various other notes including "surveillance logs" to refresh his recollection in order to insure the accuracy of his testimony. This fact gave rise to a motion by all defendants for the production of the logs.

The government resists the motions for production on the basis that the notes and logs are not discoverable under Rule 16, but are "Jencks" material. 18 U.S.C. § 3500.[2] As such, the government argues, they need only be produced after the witness has testified "on direct examination in the trial of the case" (18 U.S.C. § 3500), and that since a suppression hearing is not a trial, the material need not be turned over at this time.

## A. *NOTES RELATIVE TO DEFENDANTS' STATEMENTS*

Although the existence of the notes of Defendant Torres' statements was discovered during the course of the suppression hearing, this happenstance does not appear to be determinative of the issues of their "discoverability," but rather this issue may be resolved under general criminal discovery principles.

As I have indicated, the government takes the position that the defendants' statements are "Jencks" material and thus need not be turned over at this time. Assuming arguendo that the Jencks Act is the applicable law, analysis suggests that, given the peculiar facts of this case the defendant is now entitled to the notes.[3]

---

1. "Probable cause arises from the totality of the *circumstances with which the agents are* confronted. . . . We [the courts], like the agents, are confronted with multiple arrangements . . . to which we must respond in a manner consistent with the principles of law by which both of us are bound. . . . Detection of crime is the function of law enforcement agents, while providing justice according to law that of judges. The perception of each is fashioned by the purpose served by each." *U. S. v. Patacchia* (9th Cir. 1979) 602 F.2d 218, 220.

2. Because so much of this opinion turns on the text of the Jencks Act, it is reproduced in full and attached as Appendix "A" to the opinion.

3. I have said "assuming arguendo" because, as will become apparent in Part "B" infra, the applicability of the Jencks Act to discovery in suppression hearings is a very complex and uncertain issue.

The government is, of course, quite correct that the Ninth Circuit has held that § 3500(a) prohibits court ordered production of statements of government witnesses at a pretrial suppression hearing. The cases have construed "in the trial of the case" literally, and thus as not encompassing a suppression hearing. See *U. S. v. Spagnuolo* (9th Cir. 1975) 515 F.2d 818.[4]

However that may be in general, the government has failed to recognize that the first motion is directed to notes relating to a statement made by a defendant, and thus requires a somewhat different analysis from that conducted when other evidence is involved.

■ In summary, the government asserts that the defendants have failed to jump two hurdles in attempting to obtain their own statements: What in general may be called a § 3500 subsection "a" hurdle (no discovery of material specified in subsection "a" until after testimony "at trial"), and a subsection "e" hurdle (a restrictive definition of "statement" which precludes discovery because the notes do not fall within the definition). Accordingly, they argue the notes would not be discoverable at all. Under the present facts defendant is entitled to present discovery, and need not satisfy "e's" restricted description of a statement.

### 1. Delayed Discovery

The language of § 3500(a) specifically provides ". . . no statement . . . in the possession of the United States which was made by a Government witness or prospective Government witness (*other than defendant*) shall be subject to subpena, discovery, or inspection until said witness has testified on direct examination in the trial

of the case." (Emphasis added.) 18 U.S.C. § 3500. Thus, by its own terms the statements of a defendant are not within the delayed discovery provisions of the statute, and we must look elsewhere for resolution of the issue.

In this case as our local rules provide, a motion for discovery was made before the Magistrate. Request number one was for "all statements, admissions, remarks or utterances, of whatever nature, alleged by any person to have been made by the above-named defendant . . .". In response the Magistrate granted discovery of all material discoverable under Federal Rule of Criminal Procedure 16. Rule 16, in turn, specifically provides "Upon request . . . the government shall permit the defendant to inspect and copy . . . any relevant written or recorded statements made by the defendant . . . the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant . . in response to interrogation by . . . a government agent . . . ." In compliance with that order the government turned over an affidavit containing a one line purported summary of Defendant Torres' statement. Obviously the summary was turned over because the government believed it was required to do so under the terms of the order.[5] Accordingly, the summary is either "written or recorded statements made by defendant" or an "oral statement which the government intends to offer in evidence at the trial . . . .". Rule 16. Thus, the only question is the discovery of the notes.

■ In this circuit the notes of law enforcement officers concerning a defendant's statement are themselves discoverable if

---

4. At the opening of this trial the defendants informed the Court that the motion to suppress would be dispositive of the case. That is, that in the event that the motion was denied it was very likely that a guilty plea would ensue. I need not reach the question of whether the fact that a suppression hearing is the only "trial", or at least the only substantive hearing that the defendants will have, affects the doctrine enunciated in *Spagnuolo*.

5. The government's firm resolve throughout this hearing to rely on the strictest interpretation of the law precludes the possibility that the discovery which the government has made was done in the spirit of cooperation urged on the government by various courts. The Court does not mean any criticism of the government's conduct, but merely observes the fact that under the circumstances, the government's act was deliberate.

the statement is discoverable. *U. S. v. Harris* (9th Cir. 1976) 543 F.2d 1247. See also *U. S. v. Johnson* (2nd Cir. 1975) 525 F.2d 999; *U. S. v. Harrison* (1975) 173 U.S.App.D.C. 260, 524 F.2d 421. As will become apparent in my discussion of the "logs", other and more urgent reasons also require the Court to order production of the material.

## 2. *Restrictive Definition of Statement*

The government has also suggested that the notes are nondiscoverable because they do not fall within the restrictive definition of a "statement" under subsection (e) of the Jencks Act and therefore are not discoverable even at trial under subsection (a). As I have noted, by its terms, subdivision (a) makes the Act inapplicable to a defendant's statements and thus the government's argument fails.

Moreover, even if for some reason the Jencks Act did apply, the restricted definition of a statement would not inhibit defendant's right to discovery. Subsection (e) provides "The term 'statement' as used in subsections *(b), (c), and (d)* of this section in relation to any *witness* called by the United States, means . . ." (Emphasis added). Thus our problem, which relates to a definition of a *defendant's statement* under "a", is not resolved by reference to subsection (e)'s restrictive definition.

For the reasons set forth above, the notes must be produced pursuant to the Magistrate's order.

## B. *THE SURVEILLANCE LOGS*

The issue of the discovery of the surveillance logs and like material is more problematic. It turns first on what are the applicable rules of evidence at a suppression hearing, and then on whether the Jencks Act is the applicable statute.

## 1. *Refreshing Recollection*

The initial problem faced by this Court is a determination of the appropriate ground rules applicable to a motion to suppress. This problem arises by virtue of the testimonial posture of the case. It will be recalled that Agent Hamilton used the sur-

veillance logs to refresh his recollection concerning the events to which he testified.

The rules relating to refreshing recollection distinguish criminal from civil cases:

"*Except as otherwise provided in criminal proceedings by section 3500 of title 18, United States Code,* if a witness uses a writing to refresh his memory for the purposes of testifying, either—(1) while testifying, or (2) before testifying, if the court in its discretion determines it is necessary in the interest of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness." FRE 612 (Emphasis added.)

Thus the Federal Rules of Evidence appear to refer us back to 18 U.S.C. § 3500 for resolution of this issue. However, as with so much of the Rules of Evidence, initial appearances may be deceiving. FRE 1101 provides without limitation of any kind as follows:

"(d) Rules inapplicable. The rules (other than with respect to privileges) do not apply in the following situations: (1) Preliminary questions of fact. The determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under Rule 104."

There appears to be no question that since we deal with a suppression motion this is a "determination" under Rule 104,[6] i. e. the motion questions "the admissibility of evidence." FRE 104(a). Accordingly, the provisions limiting the ordinary rules relating to refreshing recollection by reference back to the Jencks Act under Rule 612 "do not apply" under Rule 1101(d)(1). That is, Rule 104 is a rule of evidence which by the specific terms of Rule 1101(d)(1) does not apply to determinations of a "fact preliminary to the admissibility of evidence." In like fashion, Rule 612 relative to refreshing recollection, is a rule of evidence and accordingly "does not apply." Thus, since

---

**6.** The text of Rule 104 is attached as Appendix "B" to the opinion.

Rule 612 does not apply, its reference back to the Jencks Act (18 U.S.C. § 3500) is likewise inapplicable.

The Advisory Committee notes state relative to 1101(d)(1) "Paragraph (1) restates, for convenience, the provisions of the second sentence of Rule 104(a) . . .". In this the Advisory Committee is simply in error. The second sentence of 104(a) reads "In making its determination it [the court] is *not bound* by the rules of evidence except those with respect to privileges." (Emphasis added.) The words "not bound" have an entirely different and much narrower purport than the flat statement that the rules "do not apply."

"Not bound" simply means that the court may generally apply the rules unless for some reason they should not be applied. *U. S. v. Matlock* (1974) 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242. "Not applicable" on the other hand means what it says—they don't apply. It may be suggested that the Advisory Committee notes should be treated as "legislative history" and thus expressive of the drafter's intent that 1101(d)(1) means no more than 104; however, such treatment breaches a fundamental canon of construction. The words are plain and unambiguous—thus no construction is required or indeed permitted. *U. S. v. American Trucking Association, Inc., et al.* (1940) 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345.[7] In the absence of definitive guidance, it is this Court's intention to apply the common law of evidence interpreted "in the light of reason and experience" (*Wolfle v. U. S.* (1934) 291 U.S. 7, 12, 54 S.Ct. 279, 279, 78 L.Ed. 617.[8] Applying the common law of evidence in light of reason and experience,

the result is clear: "On a general principle . . . that has in view the risk of imposition and false aids, against which the opponent is entitled to the means of protection, the writing must be *shown to him on request.* Furthermore, as by this opportunity of *inspection* the opponent is guarded against imposition clearly apparent, so by *cross-examination* based on the paper he may further detect circumstances not appearing on the surface, and may expose all that detracts from the weight of testimony." (Emphasis supplied.) 3 Wigmore on Evidence, Chadbourn Revision § 762, p. 136.

Assuming arguendo, however, that the referral back to the Jencks Act is correct, not because the rules apply but because Jencks governs a criminal defendant's discovery rights, the government's position is not necessarily vindicated. As I have noted above, the Ninth Circuit has construed § 3500(a), which requires production of the material only after the witness has testified "in the trial of the case," to preclude the Court from ordering production prior to the triggering event of testimony at trial. Curiously, insofar as I can determine, those cases do not discuss Paragraph (b) of § 3500 which provides that "[a]fter a witness called by the United States has testified on direct examination, the court *shall* on motion of the defendant, order the United States to produce any statement . . . of the witness in possession of the United States which relates to the subject matter as to which the witness has testified . . .". (Emphasis supplied.)

■ Critical to the issue which is faced by the Court is that Congress chose in Para-

---

7. Nor can it be suggested that this construction leads to absurd results. Although the Rules of Evidence are not applicable, a suppression hearing is neither a barroom brawl nor a Kangaroo Court. Accordingly, some rules must be applicable. What they are is not apparent. The Court is frankly amazed. Hopefully the Court of Appeals will elucidate what rules apply.

8. This creates no problem in the admissibility of hearsay, since as I note in several places in the opinion, a suppression hearing deals with what the government knew, whatever the

source. In effect, in a "probable cause" hearing the hearsay evidence is admitted not for its truth, but for the purpose of establishing what was known. The Court must then weigh that knowledge in light of its reliability to determine if a reasonable officer would believe a crime had been committed and defendant was the culprit. Finally, of course, the Court must determine if an exception to the warrant requirement then existed. The latter question, unlike the first, is a question of fact (e. g. were there exigent circumstances) requiring application of the Rules of Evidence.

graph (b) not to use the words "in the trial of the case" which it used in subparagraph (a). Obviously, Congress knew how to say "in the trial of the case" when it meant it, having used those precise words in the immediately preceding subparagraph. In the absence of clear textual evidence it cannot be assumed that Congress simply had a lapse of drafting. "[T]he Legislature must be presumed to know the meaning of words, and to have used the words of a statute advisedly." 73 Am.Jur.2d 393 *Statutes* § 196. Thus, the Court believes that a fair reading of the two provisions together results in a construction that in general, criminal discovery is governed by 18 U.S.C. § 3500(a). Accordingly, material is not discoverable, subject to subpena or inspection until a witness testifies "at the trial of the case." Where, however, a witness testifies at a suppression hearing, discovery is governed by § 3500(b). At such a hearing, after a witness has testified, and the defendant makes an appropriate motion, the court "shall order the United States to produce" the material specified.

■ This construction of § 3500 is particularly appealing because it avoids confronting a constitutional claim not heretofore faced in the cases. The issue to be resolved in a warrantless search and seizure case is whether the government had reasonable and probable cause. Thus in this case the hearing requires a particular and close examination of the events leading up to the stop in question and what the arresting officers knew at the time of the stop. That information can only be obtained from the arresting officers. It exists nowhere else and thus independent investigation by the defendant must almost always be fruitless. Accordingly, effective cross-examination on what the government asserts it knew can only arise in a context in which the defendants are permitted to searchingly examine the question at the hearing. Depriving the defendants of the government's records as to what the agents knew at the time of the stop makes meaningful cross-examination almost impossible. Where the defendants are " . . . denied the right of effective cross-examination," the effect is

" ' . . . constitutional error of first magnitude and no amount of showing of want of prejudice would cure it.' [citations omitted]" *Davis v. Alaska* (1974) 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347.

■ In *Davis* the court required a state created testimonial privilege to yield to the right of cross-examination on the issue of bias in order to insure defendant's constitutional right of confrontation. Here we deal not with a secondary question of bias, but the very substance of the testimony. Thus I conclude, adhering to a construction of § 3500 that limits the defendant's access to the only material providing him with the ability to meaningfully cross-examine would raise serious questions under Amendment VI to the United States Constitution. It is fundamental that a statute should be construed in such a fashion as to avoid a constitutional question if possible. *American Communications Association v. Douds* (1950) 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925; see also *Lynch v. Overholser* (1962) 369 U.S. 705, 82 S.Ct. 1063, 8 L.Ed.2d 211. I stress that I do not resolve that Sixth Amendment question; on the contrary, in accordance with standard judicial canons I avoid the issue by construction of § 3500 which makes 18 U.S.C. § 3500(b) applicable to suppressing hearings rather than subsection (a).

Candor requires me to say that as personally convinced as I am of the propriety of the above analysis, I would nevertheless hesitate to order the government to turn over its records. If I wrote on a clean slate I would unhesitatingly so order, however I do not write on a totally clean slate. Although *Spagnuolo, supra* does not specifically deal with the distinction I draw between subsections (a) and (b) of § 3500, it nonetheless appears quite uncompromising.

## 2. *Applicability Of 18 U.S.C. § 3504 To Suppression Hearings*

■ A second, and alternate ground, however, exists for requiring the government to turn the information relating to

the suppression hearing over to the defendants at this stage of the proceeding. Both counsel and the courts have simply assumed that § 3500 was the only statute dealing with the discovery of material such as the government records in question. In sum it has been assumed that if § 3500 did not authorize the delivery of the material in question, no other statute does, and the defendants were simply required to conduct the hearing and cross examine in the dark.[9] Such does not appear to be the case. It appears that another statute may well govern suppression hearings.

Section 3504 of 18 U.S.C. provides in pertinent part as follows:

"(a) In any trial, *hearing,* or other proceeding in or before any court . . . (1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the unlawful act; (2) disclosure of information for a determination if evidence is inadmissible because it is the primary product of an unlawful act occurring prior to June 19, 1968, or because it was obtained by the exploitation of an unlawful act occurring prior to June 19, 1968, shall not be required unless such information may be relevant to a pending claim of such inadmissibility; . . ." (Emphasis supplied.)

The clear implication of § 3504(a)(2) is that if information is relevant to a pending claim of inadmissibility, it shall be produced. Thus, prima facie it appears that 18 U.S.C. § 3504 requires the production of information if it is relevant to an alleged "unlawful act." Congress defined "unlawful act" in subparagraph (b). Unfortunately, as will become apparent, a close reading

of the statute indicates that the definitional phrase has either been improperly punctuated, or intended language omitted. The statutory provision is as follows:

"As used in this section 'unlawful act' means any act the use of any electronic, mechanical, or other device (as defined in section 2510(5) of this title) in violation of the Constitution or laws of the United States or any regulation or standard promulgated pursuant thereto."

It is clear that the provision is ambiguous. Did Congress intend to have a comma between "any act" and "the use of any electronic, etc."? Did Congress intend the word "including" to follow the phrase "any act" or did it intend the words "constituting" or "limited to" to follow the words "any act"?

An examination of the legislative history does not reveal what words or punctuation Congress intended, but it does shed some dim light on the scope of § 3504. The House Report indicates that the question which the House sought to address in § 3504 was that which arose from the congressional finding that "[t]his section contains a special finding relating, as do the following sections of the title, to certain evidentiary problems created by *electronic surveillance* conducted by the Government prior to the enactment of Public Law 90–351 . . ." (Emphasis added.) H.R. Rep.No.91–1549, 2d Sess., p. 50, U.S.Code Cong. & Admin.News 1970, pp. 4007, 4026. Thus, the committee report informed the members that its version defined "unlawful act" as follows: "The term 'unlawful act,' as used in this section, is defined to mean the use of any electronic, mechanical or other device as defined in section 2510(5) of Title 18 United States Code (see section 3504(b)) in violation of the Constitution or laws of the United States as amended." Id.

9. This assumption is hardly surprising. In *Palermo v. U. S.* (1959) 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287, the Supreme Court held that "statements of a government witness made to an agent of the Government which cannot be produced under the terms of 18 U.S.

C.A. § 3500 cannot be produced at all." Id. at 351, 79 S.Ct. at 1224. The balance of this opinion explores whether since 1959, when *Palermo* was written, Congress has provided another statutory basis for criminal discovery

at p. 51, U.S.Code Cong. & Admin.News 1970, p. 4027.[10]

The Senate version, on the other hand, defined "unlawful act" quite differently. Its provision was that the term "means any act in violation of the Constitution or laws of the United States or any regulation or standard promulgated pursuant thereto." Sen.Rep.No.91–617, 2d Sess., p. 15.[11] The Senate version was clearly broader. The Senate version was consistent with its Committee's final findings. The Senate Committee Report reads as follows:

"Title VII of S–30 as amended is derived from S–2292, which was originally introduced by Senator McClellan for himself and Senator Hruska . . . [c]larifying amendments have been made at the suggestion of the Department of Justice . . . The Department's suggestion that the scope of Title VII might appropriately be limited to the electronic surveillance area has, however, been rejected by the Committee since it was felt that no principled distinction could be drawn between various kinds of allegedly suppressible derivative evidence based solely on the character of the primary suppression ground. The courts themselves have drawn no such distinction and the committee perceived no reason why the Congress should. . . . Title VII represents a careful effort by the committee to balance the competing interests of justice, personal security, fair trial, and privacy in a delicate area not only dealing with organized crime, but cutting across the entire administration of justice. . . ." Id. at p. 70.

Regrettably the legislative history is silent as to how the Bill emerged in its present form.[12] Because of the unfortunate present form of the Bill, which fails to clearly demonstrate whether the House's sole concern with electronic surveillance or the Senate intent to include all suppression motions, or some amalgam was ultimately adopted, the court must construe the statute without definitive legislative aid.[13]

 Two recognized principles relating to construction of ambiguous statutes appear to aid in the resolution of the question of the scope of the hearing provided under § 3504. "It is well settled that penal statutes are subject to a strict construction. More accurately, it may be said that such laws are to be interpreted strictly against the state and liberally in favor of the accused." 73 Am.Jur.2d, 451, *Statutes* § 293, and see the cases collected at fn. 12 and 13 thereof. Obviously, given the restricted and delayed discovery provided under § 3500, an interpretation that § 3504 with its extended and prompt right to discovery governs, favors the defendant. But it may be said that strictly speaking the statute that we consider is not penal in nature but merely a matter of criminal procedure. Even here it would appear that a construction favoring inclusion of all constitutional challenges under § 3504 is appropriate. "It is a general rule of law that statutes which are remedial in nature are entitled to a liberal construction. . . . The rule also applies to statutes having for their

---

when requested in conjunction with a suppression hearing.

**10.** Note that the words "any act" do not appear.

**11.** Note that the words "any act" do appear.

**12.** Our research indicates, and the Ninth Circuit library confirms, that the Conference Committee did not address the section in question.

**13.** Although it is not clear, it may be that the House *language* (even if not the House restriction) was adopted. See p. 11 of the House Report. This lack of clarity arises from two facts. First, as noted above, the House Com-

mittee Report's description of the definition section uses different and unambiguous language (see House Report p. 51), and second, despite the Senate's rejection of the Justice Department's suggestion, the Senate version enjoyed "broad support of the Department of Justice." (Senate Report p. 70) Accordingly, it would appear the Senate would have no occasion to retreat from its principled determination to extend the section to all allegations of unlawful conduct by the government. Since the Conference Committee report indicates § 3504 was not addressed by the Committee, no definitive conclusion could be drawn whichever language was adopted.

design the simplification of procedure and the removal of technicalities in connection therewith." 73 Am.Jur.2d 443, *Statutes* § 278. In this regard, it is clear that the government's position, if correct, renders meaningful pretrial suppression hearings, when they turn upon probable cause, exceedingly doubtful.

As noted above, probable cause has to do with the state of mind and the state of knowledge of the government agents at the time of seizure, and thus can only be ascertained from their testimony and their records. If the government's position is correct, at each suppression hearing the defendant would be deprived of material critical to his cross-examination and indeed the court's ability to evaluate probable cause would be similarly constricted. The net result is that the defendant would have a suppression hearing, and normally would be unable to prove his case. The matter would then go to trial. After the government witness had testified, the government would be required to turn over the documents, and the defendant would then be justified in asking for a second suppression hearing based upon the newly discovered evidence. Aside from the extremely awkward procedure, the resultant requirement of many cases going to trial which would otherwise be disposed of by a meaningful probable cause suppression hearing, and the requirement of a second midtrial suppression hearing, constitutes a burden upon the courts which cannot be justified.

■ The Court is not insensitive to Congress's concern with the "protection of government files . . . to protect government witnesses from threats, bribery and perjury." *U. S. v. Walk* (9th Cir. 1975) 533 F.2d 417, 419. It must be stressed,

however, that legitimate governmental concerns may always be preserved by a motion for a protective order.[14] Fed.R.Crim.P. 16(d)(1).

■ It must also be stressed that broad discovery in connection with a suppression motion will not automatically result in a flood of hearings the real purpose of which is premature discovery. In this circuit a defendant is not entitled to a suppression hearing unless ". . . the moving papers . . . are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented." *Cohen v. U. S.* (9th Cir. 1967) 378 F.2d 751, 761.[15]

Finally, this construction lessens the effect of an incongruity in the law. Although the defendant enjoys both a presumption of innocence and a right to remain silent, the rules require that the defendant provide, at the earliest opportunity, "and in no event less than ten days before trial" full information of two possible defenses, "Notice of Alibi," Fed.R.Crim.P. 12.1, and "Notice of Defense Based Upon Mental Condition," Fed.R.Crim.P. 12.2. A constitutional rationale for requiring the defendant to make full disclosure pretrial, but depriving him of the only source of information to raise his constitutional claims is difficult to perceive.

## C. *FURTHER PROCEEDINGS*

■ For all of the above reasons, the Court believes that at this stage of the proceedings the government is required to deliver to the defendants all documents in its possession relating to the issue of probable cause for the stop, seizure pursuant to the stop, and the fruits of the stop and seizure. The government has indicated in open court its unwillingness to comply with this order, and that it desires to seek review.

---

14. Perhaps I am unduly influenced by my experience as a judge of the Superior Court of the State of California. As is well known, California has perhaps the broadest right of discovery provided criminal defendants. There are no untoward results. On the contrary, since everyone knows what the facts are, suppression motions are handled expeditiously, direct and cross-examination are focused on the real factual issues, and most hearings are disposed of

in a few hours. Finally, no dramatic escape of the guilty occurs. In California, as elsewhere, the vast majority of cases terminate in pleas of guilty.

15. The fact that in order to obtain a hearing the defendant is held to a strict evidentiary standard, but that the hearing itself is not governed by the Rules of Evidence, is not the least ironic feature of this entire proceeding.

The Court is anxious to obtain the most expeditious review possible. In order to put the case in a procedural posture permitting the government to pursue its appeal, I now order suppressed all evidence seized by the government, and the fruits of any such seizure including the materials seized pursuant to the so-called "consent" search. The Court finds that the evidence suppressed is substantial proof of a fact material in the proceedings and that appeal is not for purposes of delay. This places the government in an appropriate procedural posture to appeal under 18 U.S.C. § 3731.

IT IS SO ORDERED.

## APPENDIX A

**§ 3500. Demands for production of statements and reports of witnesses**

(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery or inspection until said witness has testified on direct examination in the trial of the case.

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

(c) If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimo-

ny of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use. If, pursuant to such procedure, any portion of such statement is withheld from the defendant and the defendant objects to such withholding, and the trial is continued to an adjudication of the guilt of the defendant, the entire text of such statement shall be preserved by the United States and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. Whenever any statement is delivered to a defendant pursuant to this section, the court in its discretion, upon application of said defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial.

(d) If the United States elects not to comply with an order of the court under subsection (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

(e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

# 1246

Added Pub.L. 85–269, Sept. 2, 1957, 71 Stat. 595, and amended Pub.L. 91–452, Title I, § 102, Oct. 15, 1970, 84 Stat. 926.

## APPENDIX B

### PRELIMINARY QUESTIONS

**(a) Questions of admissibility generally.** Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

**(b) Relevancy conditioned on fact.** When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

**(c) Hearing of jury.** Hearings on the admissibility of confessions shall in all cases be conducted out of the hearing of the jury. Hearings on other preliminary matters shall be so conducted when the interests of justice require or, when an accused is a witness, if he so requests.

**(d) Testimony by accused.** The accused does not, by testifying upon a preliminary matter, subject himself to cross-examination as to other issues in the case.

**(e) Weight and credibility.** This rule does not limit the right of a party to introduce before the jury evidence relevant to weight or credibility.

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO RECONSIDER

Subsequent to the Court's Memorandum and Order the United States requested an in camera review for relevancy of the notes made by the Secret Service Agent relative to Defendant TORRES' statements. In conjunction with that motion the government supplied the Court with a copy of the notes in question. The Court has reviewed the notes and finds them relevant.

The Court further finds that the material in the notes is clearly exculpatory evidence and thus, in any event, was required to be delivered to defendant under the Due Process Clause of the United States Constitution. *Brady v. Maryland* (1973) 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.

The government supports its motion for reconsideration with a citation to *U. S. v. Bernard,* 607 F.2d 1257 (9th Cir. 1979). It does not aid the government.

First, *Bernard* specifically recognizes that the notes of the agent are discoverable. Second, the Court, relying on *U. S. v. Curran* (9th Cir. 1974) 498 F.2d 30 and *U. S. v. Spagnuolo* (9th Cir. 1975) 515 F.2d 818, merely holds that 18 U.S.C. § 3500(a) "trial of the case" language does not apply to a suppression hearing. I agree. *Bernard* does not address 18 U.S.C. § 3500(b), the Sixth Amendment problem or 18 U.S.C. § 3504. Accordingly, it does not affect this Court's determination of those issues.

Given the government's motion to reconsider, the Court takes this opportunity to add a footnote to the Memorandum and Order heretofore issued.

After the words "in the dark" on p. 1242, the Court adds a Footnote No. 9. The footnote reads as follows:

[9] This assumption is hardly surprising. In *Palermo v. U. S.* (1959) 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287, the Supreme Court held that "statements of a government witness made to an agent of the Government which cannot be produced under the terms of 18 U.S.C.A. § 3500 cannot be produced at all." Id. at 351, 79 S.Ct. at 1224. The balance of this opinion explores whether since 1959, when *Palermo* was written, Congress has provided another statutory basis for criminal discovery when requested in conjunction with a suppression hearing.

The footnotes following this insertion are renumbered accordingly.

IT IS SO ORDERED.