**UNITED STATES of America, Plaintiff,**

v.

**William Dale SMITH, Sr., et al., Defendants.**

**Crim. No. S–80–118 LKK.**

United States District Court, E. D. California.

Aug. 28, 1980.

Herman Sillas, U. S. Atty., John C. Gibbons, Asst. U. S. Atty., Sacramento, Cal., for plaintiff.

Heman B. Smith, Smith & Yee, Sacramento, Cal., for defendant William Dale Smith, Sr.

Harvey Byron, Los Angeles, Cal., for defendant Julius Fisherman.

## ORDER

KARLTON, District Judge.

Defendants SMITH and FISHERMAN together with twenty–one others were indicted by a grand jury in connection with the importation of white heroin. The grand jury accused SMITH of violations of 21 U.S.C. § 846, 21 U.S.C. § 848 and 21 U.S.C. § 841(a)(1). FISHERMAN is accused in the conspiracy count of participation in approximately ten of the more or less two hundred fifty overt acts alleged. The Honorable Sherrill Halbert, Senior Judge of this district received the indictments, issued warrants and set bail in the amounts requested by the United States Attorney (one and one half million dollars) for each of the defendants. The bail was to be satisfied only by cash or corporate surety.

A bail hearing was held before Judge Halbert and no modification was ordered. Thereafter a bail hearing was held before Magistrate Esther Mix.[1] SMITH sought to satisfy bail with the pledge of a jewelry business owned by his friend and real property owned by his family. The magistrate rejected the pledge of the business as mechanically unworkable since, in her view, it would require the placing of a keeper in the store. Bail was continued in the same amount, and again could only be secured by cash or corporate surety in the full amount.

FISHERMAN sought a reduction in bail at the arraignment. Pursuant to motion, the magistrate reduced bail to $1,000,000 cash or corporate security.

A second hearing for both defendants was held before the magistrate. At the second hearing for SMITH, he sought release by posting deeds of trust for real property valued at ten percent of the bail. The magistrate, believing ten percent insufficient, refused to modify the previous orders requiring cash or corporate surety, and entered written findings accordingly. The magistrate reduced FISHERMAN's bail to $500,000, again to be secured only by cash or corporate surety.

FISHERMAN moved this court for consideration of bail and SMITH appealed the magistrate's orders. Because of the uncertainty which exists as to the proper mode of review of the magistrate's orders, in resolving the matters sub judice I will disregard the different procedural modes, and the disparate scope of review suggested by them.[2]

This opinion considers first, the proper procedure to be used by an incarcerated defendant in seeking district court consideration after a magistrate's bail order. Next,

---

1. In this introductory portion of the opinion, I am deliberately using the generic term "hearing" in describing the various times that bail has been considered in these cases. As I hope will become clear in my subsequent discussion, these hearings have various discrete functions and it makes analytical sense to distinguish between them. Thus ultimately in this opinion each hearing will receive a name relating to its function: "Release Hearing," "Review Hearing," and "Amendment Hearing."

2. The confusion arises in part out of the Bail Act itself and that, by virtue of our local rules implementing the Magistrate's Act, appeal may be reasonably but erroneously perceived as the appropriate device for review of a magistrate's bail determination.

whatever the procedure, I address the question of the scope of review (i. e. does the district court reweigh the facts or determine whether the magistrate's decision was "clearly erroneous"). I then address the question of the nature of the hearing (i. e. may the parties present evidence or are they limited to the record developed by the magistrate). Finally, I turn to the two defendants whose applications have been the occasion for this opinion.

## I

## THE PROCEDURE TO BE UTILIZED IN SEEKING DISTRICT COURT CONSIDERATION AFTER A MAGISTRATE'S BAIL ORDER

Because of the vital interests at stake, and because the Constitution prohibits excessive bail, one would think that the procedure for consideration of bail would be well established, routine and, above all, clear. While it has been observed that "[T]he Bail Reform Act [18 U.S.C. § 3141 et seq.] provides an elaborate system of review for those who are . . . in custody . . ." 3 Wright & Miller, *Federal Practice and Procedure* 280, Release on Bail § 771, I cannot agree that the method and nature of consideration (i. e. the system) is very clearly provided for. The bail statute is, to say the least, abstruse on the matter of procedure. Moreover, despite thousands of federal prisoners who have been processed through the federal courts since adoption of the Act, the case law is scant and not completely determinative. It appears to me that the most useful mode of analysis is to examine the provisions of the bail statute in light of the successive steps of a federal criminal prosecution.

3. Of course there is no legal impediment to a magistrate fixing bail in a non-capital case. 18 U.S.C. § 3141.

4. Because ordinarily upon arrest a defendant must be promptly brought before a magistrate (see infra), the essentially unreviewable nature of the order fixing bail rendered in connection with a warrant would not generally constitute a serious problem. Nonetheless, it is certainly

## A. THE RELEASE HEARING

Typically, the first court action in federal prosecutions (and the first step in the instant cases) is the indictment of the defendants by the grand jury. FRCrimP 6. Upon the return of the indictment, a warrant is issued and the amount of bail is "fixed by the court." FRCrimP 9(b)(1). The Rules' provision that the amount of bail set in connection with a warrant is fixed "by the court" introduces the first of many confusions which attend the issue of bail procedure. In this district, and I expect throughout the federal system, the warrant is signed and the bail fixed at the time the indictment is returned. The return, in this district (unlike many districts), is normally made to a senior district judge; however, whichever judicial officer fixes bail in connection with the warrant issued upon return of the indictment (i. e. magistrate or district judge) it is clear that the judicial officer is *acting* as a magistrate. The rules provide that "the indictment shall be returned by the grand jury to a federal magistrate in open court." FRCrimP 6(f).[3]

There appears to be no provision in either the rules or statutes for the method or standards for setting bail in connection with a warrant issued subsequent to the return of an indictment. The first words of the Bail Reform Act clearly demonstrate that the statute's application commences upon arraignment. For this reason, the Bail Act's provisions relating to review of bail and amendment of bail orders do not apply. Presumably, then, the only outer limits for such bail are those provided in the Eighth Amendment.[4]

The next step in the criminal process is arrest pursuant to the warrant. "An officer making an arrest under a warrant .  .

possible to envision circumstances where this sanguine observation would not apply and a hearing would be necessitated. The mechanism to accomplish such a hearing is not apparent, but the Eighth Amendment would appear to necessitate some sort of hearing. Cf. *Kolod v. U. S.* (1968) 390 U.S. 136, 88 S.Ct. 752, 19 L.Ed.2d 962; *West v. Janing* (D.Neb.1978) 449 F.Supp. 548, 552.

shall take the arrested person without unnecessary delay before the nearest available federal magistrate." FRCrimP 5(a). Here for the first time the criminal process and the Bail Act provisions join.

The Act provides "Any person charged with an offense . . . at his [first] appearance before a judicial officer" shall be released on his own recognizance, released under conditions or on various types of bond. 18 U.S.C. § 3146(a).[5]

Because "[t]he whole spirit of the Bail Reform Act . . . is that a defendant facing trial should be released, rather than detained, unless there are strong reasons for not releasing him" (*U. S. v. Honeyman* (9th Cir. 1972) 470 F.2d 473, 474), this initial hearing may reasonably be denominated a "Release Hearing." Cf. 3 Wright & Miller, *Federal Practice and Procedure* 280, Release on Bail § 771. The standards to be applied at this hearing need not detain us at this juncture since here we only explore the procedure.

Suffice it to say, that after the magistrate has made a release order, that judicial officer's duties are not ended.

## B. THE REVIEW HEARING

The statute provides that if a defendant is unable to meet the conditions of release, he or she is entitled to have "the conditions reviewed by the judicial officer who imposed them." 18 U.S.C. § 3146(d).[6] This "Review Hearing" must be granted if twenty–four hours have elapsed since the Release Hearing and the defendant is still in custody. *Id.*

The standards to be applied in the Review Hearing are not explicated, but common sense is strongly suggestive as to what they are. Since it is extremely unlikely that any new facts bearing on whether a defendant should be released other than his or her inability to meet the conditions previously set will have emerged within twenty–four hours, it is the latter fact which must be crucial. Since the bias of the Bail Act is in favor of pretrial release, if a defendant is unable to meet the conditions, that fact may be suggestive that the conditions are excessive within the meaning of the Eighth Amendment. Accordingly, the Act requires that at the Review Hearing a closer examination of the actual circumstances and the conditions imposed at the Release Hearing be conducted. This conclusion is buttressed by the fact that at the Release Hearing the magistrate need make no specific findings, but at the Review Hearing, if no change of conditions is ordered "the judicial officer shall set forth in writing the reasons for requiring the conditions imposed." 18 U.S.C. § 3146(d). Obviously, a requirement that reasons be placed in writing insures that the magistrate has in fact considered the factors bearing upon release enunciated in the statute, and thus militates against the suggestion that the conditions of release are excessive.

If at the Review Hearing the magistrate fails to reduce bail or other conditions imposed at the Release Hearing, resort may then be had to the judge of the district court.[7]

---

5. It is most unfortunate that the language of the Bail Reform Act does not track the language of Rule 5 (i. e. "brought before a magistrate"), but rather uses the term "judicial officer." Inconsistency in the use of statutory and rule language gives rise to ambiguity and uncertainty as to whether the rule in fact was intended to track the statute. Inasmuch as the words "judicial officer" are broader and encompass either a magistrate or a judge, I do not believe that the disparate language is of any consequence. Accordingly, I do not regard as significant the happenstance that Smith's bail was first reviewed by a judge rather than a magistrate.

6. In the event that the judicial officer is unavailable "any other judicial officer in the district may review such conditions." 18 U.S.C. § 3146(d).

7. One court of appeal has suggested that a district court is without jurisdiction to hear the detainee until he or she has had a Review Hearing. *Shackleford v. U. S.* (C.A.D.C.1967) 383 F.2d 212. Even if the Review Hearing is not a jurisdictional prerequisite to a district court hearing, it is clearly better practice.

## C. THE AMENDMENT HEARING

The statutory mechanism for district court review is a motion "to amend the order [entered at the Review Hearing]." 18 U.S.C. § 3147(a).[8] The statutory provision by its terms is neither an appeal from the Review Hearing order nor a motion to set bail. Although this peculiar statutory locution may have implications as to the scope of the hearing (see Part II, infra), or the standard applied at the hearing (see Part III, infra), for purposes of an analysis of the procedure, I here merely observe that we have finally arrived at the procedural mechanism for raising bail questions at the district court level—it is a motion to amend.

■ Confusion as to the appropriate procedural device has arisen in this district because of the provisions of the Magistrate's Act (see 28 U.S.C. § 636) and our local rules implementing them. Since under those rules, the magistrate has been authorized to hear a variety of non–dispositive pretrial motions (See Local Rule 305), and since a motion to set or review bail is such a non–dispositive pretrial motion, it has been thought by some that the review mechanism was an appeal from the magistrate's order. My reading of the bail statute, however, is that the magistrate, when considering bail, is not acting pursuant to the duties delegated under our local rules implementing the Magistrate's Act. On the contrary, when setting bail a magistrate acts under the authority specifically provided by the Bail Act. Accordingly, the procedure for district court consideration of the magistrate's disposition of the Review Hearing is also to be accomplished pursuant to the Bail Reform Act and not under the local rules. I thus conclude that the mecha-nism by which the magistrate's disposition of the Review Hearing is considered by the district court is the "motion to amend the order" provided by the Bail Act. I shall hereafter refer to that procedure as the "Amendment Hearing."

## II

## THE SCOPE OF THE HEARING ON A MOTION TO AMEND AN ORDER IS-SUED PURSUANT TO A REVIEW HEARING

Having finally gotten the issue of bail before the district court with original jurisdiction over the underlying offense, our next question is: What is the district court to do? Analytically the issue of the district court's function is divisible into two separate questions: First, what is the scope of the hearing (de novo review standard or some lesser standard) and, then, upon what material does the district court decide (the evidence presented to the magistrate, a full blown evidentiary hearing, or something in between)? This section deals with the question of scope of review.

Once again, the statute provides little guidance. The Bail Reform Act requires that the "[amendment] motion shall be determined promptly" (18 U.S.C. § 3147(a)), but is silent as to most anything else. Curiously, one duty of the district court in connection with the Amendment Hearing is not found in the statute or in the Rules of Federal Criminal Procedure, but in the Federal Rules of Appellate Procedure. Those rules provide "Upon entry of an order refusing or imposing conditions of release, the district court shall state in writing the reasons for the action taken." Federal Rules of Appellate Procedure 9(a).[9] Requiring

---

8. "§ 3147(a) A person who is detained, or whose release on a condition requiring him to return to custody after specified hours is continued, after review of his application pursuant to section 3146(d) or section 3146(e) by a judicial officer, other than a judge of the court having original jurisdiction over the offense with which he is charged or a judge of a United States court of appeals or a Justice of the Supreme Court, may move the court having original jurisdiction over the offense with which he is charged to amend the order. Said motion shall be determined promptly.

9. Wonders never cease. Someone not familiar with federal research might find it peculiar that the procedure to be followed by a district court is to be located in the Rules of Appellate Procedure which ". . . govern procedure in appeals to [the] United States Courts of Appeals from the United States district courts . . . ." *Federal Rules of Appellate Procedure*, Rule 1 (a). Others, either shell shocked or merely debilitated, just shrug it off with an "of course."

speed and written reasons, of course, does not tell us what is the nature of the court's duty.

At least two possibilities (plus an infinite number of intermediate variations) present themselves. It can be argued that inasmuch as the matter has been explored by the magistrate and a written disposition required, the scope of review should be limited by the standards applicable to district court review of orders on non–dispositive motions made by a magistrate. See 28 U.S.C. § 636. On the other hand, it may be said that such a reading is contrary to ordinary rules of statutory construction. The statute, after all, uses the word "motion" not "appeal" and "[in] the absence of clear textual evidence it cannot be assumed that Congress simply had a lapse of drafting." *U. S. v. Salsedo* (E.D.Cal.1979) 477 F.Supp. 1235, 1241, appeal dismissed as moot.

It does not appear to me that an appellate scope of review is proper. First, as I have already observed, the magistrate, when setting bail, operates not pursuant to the Magistrate's Act (and thus subject to 18 U.S.C. § 636 review) but to the Bail Reform Act and its own review procedure. Moreover, a motion (even a "motion to amend," whatever that peculiar language means) does not suggest such a limited review. "The Legislature must be presumed to know the meaning of words, and to have used the words advisedly." 73 Am.Jur.2d 393. To paraphrase myself "Congress knew how to say [appeal] when it meant it, having used [that] ·precise word [. . .] in the immediately [subsequent] subparagraph." *U. S. v. Salsedo, supra* at 1241.

The scant law addressing the question supports the notion that the district court exercises a de novo review of bail. It has been observed that "evaluating the competing considerations [relating to the conditions of release] is a task for the commissioner or judge in the first instance, and then the judges of the District Court . . have a broad discretion to amend the conditions imposed, or to grant release outright, if they feel that the balance has been im-

properly struck." *Wood v. United States* (C.A.D.C.1968) 391 F.2d 981, 984. Again, the same circuit has ruled that "We therefore hold that the filing and determination of an application under § 3146(d) thereafter frees the District Court to entertain all such motions and enter all such orders respecting conditions of release as may be warranted by the circumstances." *Grimes v. United States* (C.A.D.C.1967) 394 F.2d 933, 939.

Moreover, the time sequence relating to Release Hearings, Review Hearings, and Amendment Hearings militates against a limited scope of review. The information which was presented to the magistrate may be no more than that which the defendant was capable of gathering together within twenty–four hours of his arrest. 18 U.S.C. § 3146(d). Clearly, other additional information may well be generated pending the hearing on the motion in the district court. Moreover, since, as I hold in Part III, the court is free to receive newly developed evidence, it would be inconsistent to provide a limited review.

Accordingly, I find that by virtue of the statute's usage of the term "motion," and the cases cited above, the district court is to exercise de novo consideration of all of the facts properly before it when a motion to amend a review order is made.

### III

### THE NATURE OF MATERIAL TO BE CONSIDERED AT A HEARING ON A MOTION TO AMEND

The next question which must be addressed is what material the court may consider and how it shall be presented. Insofar as I can determine, no case has explicitly dealt with this issue. Exploration of this issue leads to one of the more frustrating aspects of the Federal Rules of Evidence; the absence of statute or rule providing evidentiary standards applicable to a wide range of proceedings. The rules provide that "the rules (other than those with respect to privileges) do not apply . . .

[to] proceedings with respect to release on bail or otherwise." Federal Rules of Evidence 1101(d)(3). As I have observed before in dealing with this rule, denying applicability of the Federal Rules of Evidence to a particular hearing does not reduce that hearing to a "barroom brawl nor a Kangaroo Court. Accordingly, some rules must be applicable." *U. S. v. Salsedo, supra*, 1240 n. 7. As in *Salsedo*, what rules are applicable is uncertain. The problem is compounded by the fact that here again Congress knew how to say that the court may receive any material, in whatever form, which the court might deem useful in disposing of the issue. Thus, in connection with the Review Hearing Congress specifically provided "information stated in, or offered in connection with, any order entered pursuant to *this* section need not conform to the rules pertaining to the admissibility of evidence in a court of law." 18 U.S.C. § 3146(f). As noted "this section" (i. e. § 3146) provides for the Release and Review Hearings; no such statutory provision is made for a lower standard of admissibility for the Amendment Hearing. Moreover, one need not even contrast the statute with the rules to demonstrate the ambiguity. The rules themselves demonstrate that the drafters of the rules knew how to provide that a court may receive evidence which does not conform to the rules of evidence when that is what they wanted to say. (See and compare Federal Rule of Evidence 104(a), "the district court is not bound" by the rules of

evidence, with Federal Rule of Evidence 1101 which provides that the rules of evidence "do not apply").[10]

■ Fortunately in this case this intractable problem need not be resolved. Only two types of evidence were before the court–unobjected to sworn testimony taken in connection with the Amendment Hearings and tapes of the magistrate's hearing. Though the tapes contained a great deal of pure hearsay which the magistrate could quite properly consider and, which as I have noted above, there is doubt the district court could consider, the parties have all stipulated that the court could consider the contents of the tapes. Hearsay admitted without objection may properly be considered by the court. *Hayden v. Chalfant Press Inc.* (9th Cir. 1960) 281 F.2d 543, 548; and see generally 79 A.L.R.2d 890.

## IV

### STANDARDS AT THE AMENDMENT HEARING

Having gotten the defendants before the district court and having determined the scope of the hearing, I now turn to the question of the standards to be applied in the district court.

■ The denomination of the motion before the district court as a "motion to amend," is suggestive of a congressional intent that the court consider the standards applicable in the Review Hearing in light of

---

**10.** Although it may be suggested that the "non-applicability" of the Federal Rules of Evidence is simply the drafters' method of permitting a lesser standard analogous to the "not bound" provisions of Federal Rules of Evidence, Rule 104(a), the source of such a resolution is not at all clear. Thus the Advisory Notes observe in connection with FRE 1101(d) "Proceedings with respect to release on bail or otherwise do not call for application of the rules of evidence." In support of this observation the notes cite 18 U.S.C. § 3146(f) which relates to the Release and Review Hearings before the magistrate and not the Amendment Hearing before the district judge. It requires a rewriting of the Act to make the lesser admissibility standards provided for Release and Review Hearings under § 3146 applicable to the Amendment Hearings held pursuant to § 3147.

The statute is quite explicit. The lesser evidentiary standards are for hearings held under "this section" not under "this act." See e. g. *Nachman Corp v. Pension Benefit Guar. Corp.* (1980) —— U.S. ——, 100 S.Ct. 1723, 64 L.Ed.2d 354, where the Supreme Court was unwilling to read into subsequent titles of a "comprehensive and reticulated statute" (*Id.* 100 S.Ct. at 1726, 64 L.Ed. at 358) definitions appearing in the first title since the statute provided that the definitions were "[f]or [the] purposes of this title." *Id.* 100 S.Ct at 1731, 64 L.Ed. at 365. Thus § 3146(f) does not appear to apply and by its own terms the Federal Rules of Evidence do not apply—and we are apparently left without guidance as to what standards do in fact apply. Cf. *U. S. v. Salsedo* (E.D.Cal.1979) 477 F.Supp. 1235, 1239–1240.

information developed at the Amendment Hearing. Thus, although the court is granted "wide discretion" to balance the competing interests (*Grimes v. U. S., supra*) these interests are to be viewed in light of the statute's "spirit" which foresees pretrial release rather than incarceration "unless there are strong reasons for not releasing [the defendant]." *U. S. v. Honeyman*, supra. I thus conclude that the standards applicable to the Review Hearing are to be applied in light of the evidence made available at the Amendment Hearing in resolving the issue.

The statute mandates consideration of release at the Review Hearing and, under my analysis, at the Amendment Hearing in a graduated manner from the least to the most restrictive conditions. First the court is to consider personal recognizance or unsecured appearance bond. If the judge determines "that such a release will not reasonably assure the appearance" he or she shall consider and impose a graduated set of conditions ranging from placement in custody of a designated person through appearance bond secured by cash or security not to exceed ten percent of the amount of bond, to full cash or surety bonds only. 18 U.S.C. § 3146(a).[11] The court may select any single condition or combination of conditions which will reasonably assure the presence of the defendant. *Id.* Thus it appears that the court may order a hybrid set of conditions, appearance bonds and bail bonds, as will satisfy the requirements of the Act.

In reaching its decision the court is required to "take into account the nature and circumstances of the offense charged, the weight of the evidence against the accused, the accused's family ties, employment, financial resources, character and mental condition, the length of his residence in the community, his record of convictions, and his record of appearances at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings." *Id.*

11. In *U. S. v. Nebbia* (2nd Cir. 1966) 357 F.2d 303, the court held that even when full cash is posted the court may properly consider the source of the cash and the sufficiency of the personal securities.

Having determined the appropriate procedures and standards for Amendment Hearings, I now consider the instant amendment motions.

## V

## BAIL IN THESE PARTICULAR CASES

### A. DEFENDANT FISHERMAN

#### 1. *Factual Considerations*

##### a. *The Nature and Circumstances of the Offense Charged.*

FISHERMAN is charged in a single count of conspiracy to possess with intent to distribute white heroin and to distribute white heroin, a schedule one narcotic drug, in violation of 21 U.S.C. § 812 and in violation of 21 U.S.C. § 841(a)(1). Approximately ten separate overt acts involving FISHERMAN are alleged. The offense is, of course, a very serious one. The maximum penalty is severe. The charge carries a maximum penalty of fifteen (15) years, a $25,000 fine, or both.

Defendant's exact relationship to the conspiracy is difficult to ascertain from the indictment. Thus, a typical allegation is Paragraph 221a which reads: "from on or about September 19, 1979, until September 20, 1979, Julius Chris Fisherman rented Room No. 309 at the Villa Motel at 4000 S. El Camino Real in San Mateo, California." Such a pleading simply does not reveal the significance of the defendant's involvement in the conspiracy. At the various bail hearings the defendant argued that the overt acts as alleged demonstrated only peripheral involvement in the conspiracy, while the United States argued that the overt acts and evidence in the Government's possession were indicative that the defendant was central to the conspiracy and in effect was the "go between." It may well be that the United States, knowing the meaning of its allegations, has some reason to so characterize the allegations. The Court, bereft of such background information (see "b", be-

low), has no way of assessing the defendant's involvement.

### b. *The Weight of the Evidence Against the Accused.*

█ The United States has informed the Court that the weight against FISHERMAN is substantial. FISHERMAN at this early stage and without discovery, is unable to characterize the evidence before the Court. It is difficult for the Court under these circumstances to weigh this factor. A mere assertion that the evidence is "substantial" is so ephemeral in character that neither can the defendant meet it nor the Court evaluate it. Obviously, the evidence is in the possession of the Government and it must choose whether the issue of bail is of sufficient urgency to require it to reveal the nature of the evidence. When, as here, the Government has elected not to provide a factual basis for the Court's determination, then this factor should be weighed in favor of less stringent conditions of release.

### c. *The Accused's Family Ties, Employment, Financial Resources and the Like.*

The defendant is a long time resident of Los Angeles, is presently unmarried, and has a sister whose husband has a responsible job. The sister is willing to put her home up as part of the security and to act as a responsible person to whom the defendant may be released pursuant to § 3146(a). The defendant's work history is, to say the least, extremely scanty; however, he enjoys the benefit of a small income from an estate and apparently has an adequate residence, the same having been purchased by his mother on his behalf. Certain of these factors point to less restrictive conditions (his residential stability and his sister's willingness to stand partial surety), while others point to more restrictive conditions (e. g. the absence of steady and meaningful employment).

### d. *His Record of Convictions.*

The defendant has apparently heretofore suffered a state conviction for possession of dangerous drugs. He is presently on probation relative to that proceeding and, it is asserted, enjoys a good relationship with his probation officer. The Court has been informed that he has heretofore made all court appearances relative to that proceeding. These factors would suggest less restrictive conditions, except that the previous conviction will be taken into consideration if the defendant is convicted and judgment and sentence passed. In essence, these two matters appear to the Court to balance each other out.

### e. *Evidence Concerning Flight to Avoid Prosecution.*

No such evidence appears in this case.

### 2. *Bail Order*

█ An assessment of each of the factors in light of the record before the Court indicates, as is so frequently the case, that certain factors point towards less restrictive conditions and certain factors towards more restrictive conditions, while other factors cannot be resolved. The fact of the matter is that a district court judge, after an exhaustive examination of the statutory criteria, must still call upon his or her own experience as attorney and judge in attempting to fashion conditions which will reasonably assure the defendant's presence. Accordingly, the Court now orders defendant FISHERMAN released on the following conditions:

A hybrid bail is set at $250,000. Bail may be satisfied with security in the form of the deed to the defendant's and sister's homes provided that their combined value is at least ten percent (10%) of the bail set and the defendant shall sign an appearance bond for that portion of the bail that is not secured by property and acknowledge that his failure to appear may subject him to prosecution under 18 U.S.C. § 3150.

The following further conditions are imposed:

a. The defendant shall be released to the custody of his sister upon her execution of an agreement under which she will:

(1) Agree to supervise the defendant;

(2) Agree that the defendant shall call her, and she shall make herself available for

such telephone call, not less than once each morning (i. e. prior to twelve noon) and once each evening (i. e. not later than 10:00 p. m.);

(3) That she shall insure that he shall be at his place of residence not later than 10:00 p. m. each evening; and

(4) That she shall immediately inform the United States Marshal of this district (Telephone: (916) 440–2163) upon the defendant's (aa) failure to make any of the telephone calls required by this order, (bb) absence from his residence at the times specified, or (cc) upon any other violation of the conditions of release she becomes aware of. The sister shall further acknowledge in said agreement that her failure to report the defendant, as specified herein, shall be a violation of this Court's order and shall subject her to possible criminal contempt proceedings.

·b. Defendant shall, prior to release, arrange for the delivery of his passport to the Clerk of this court and shall thereafter make no application for a passport pending resolution of this matter.

c. The defendant shall not leave the County of Los Angeles save to be present at this court for all proceedings.

d. The defendant shall make the telephone calls provided for in condition "a(2)" above and shall return to his home each evening by 10:00 p. m. and remain there until at least 7:00 a. m. the next morning.

## B.  DEFENDANT SMITH

### 1.  *Factual Considerations*

Defendant SMITH presents an even more troubling case. He is alleged to be the "ring leader" of a conspiracy to import multi kilograms of white heroin. That role is clearly set forth in the indictment. Moreover, he is charged with a violation of 21 U.S.C. § 848, a continuing criminal enterprise, with a maximum punishment of life imprisonment and a minimum penalty of ten (10) years imprisonment; as well as a violation of 21 U.S.C. § 846, Conspiracy, with a fifteen (15) year maximum term, and 28 U.S.C. § 841(a)(1), again with a long

maximum term provided. These matters in and of themselves suggest a very high bail is required. The United States has also indicated that the evidence is heavy and has particularly emphasized both the presence of certain false identifications on his person at the time of his arrest and the fact he had recently been living under an alias. On the other hand, the defendant, in connection with previous criminal proceedings, has unfailingly made his appearances.

Although the defendant had real ties to this community, from all that appears they have recently been abandoned. Nonetheless, his family and friends are prepared to post their homes and personal property.

■ The Court cannot help but believe a high bail and very secure conditions are required. I recognize that a high bail and very secure conditions may prevent release and this in turn may affect his ability to prepare a defense. Nonetheless, I believe that under the circumstances, and particularly with reference to the penalty and the defendant's use of an alias, great caution is required.

### 2.  *Bail Order*

Accordingly, I order as follows:

a. Defendant's bail is set at $500,000; said bail must be fully secured but may be secured by deeds of trust, personal property, cash, corporate securities or any combination thereof;

b. Upon the posting of sufficient security the defendant will be released under the following conditions:

(1) He is to reside with his daughter, S. Lambert, at her address in Sacramento County;

(2) He shall be in her home by 10:00 p. m. each evening and not leave until at least 7:30 a. m. the next morning;

(3) He is not to leave the County of Sacramento;

(4) The defendant is to turn in any passport he has to the Clerk of this court and he shall not apply for any other during the pendency of this action;

(5) Defendant is to make all appearances in this matter. He is specifically advised that failure to comply with this order may subject him to prosecution under 18 U.S.C. § 3150;

(6) Defendant is to be released to the custody of his daughter, S. Lambert.

(7) Defendant's daughter is to sign an agreement that she accepts responsibility for the supervision of defendant pursuant to this order and that she will promptly inform the United States Marshal by telephone ((916) 440–2163) in the event that defendant fails to comply with any of the terms of release and that she recognizes that a failure on her part to do so constitutes disobedience to this Court's order to her and may subject her to criminal contempt proceedings.

IT IS SO ORDERED.