**UNITED STATES of America, Plaintiff,**

**v.**

**John BIRGES, Sr., John Waldo Birges, Jr., James William Birges, Ella Joan Williams, Willis "Bill" Brown, and Terry Lee Hall, Defendants.**

No. CR–R–81–39–ECR.

United States District Court,
D. Nevada.

Oct. 1, 1981.

Edward R. J. Kane, Asst. U. S. Atty. Reno, Nev., for plaintiff, United States of America.

Brent Adams of Adams & Johnson, Reno, Nev., for defendant, Ella Joan Williams.

William Puzey, Reno, Nev., for defendant, Willis "Bill" Brown.

Fred Atcheson, Reno, Nev., for defendant, Terry Lee Hall.

Martin H. Wiener, Asst. Federal Public Defender, Reno, Nev., for defendant, John Birges, Sr.

## ORDER

EDWARD C. REED, Jr., District Judge.

Defendant Ella Joan Williams has filed a motion, pursuant to 18 U.S.C. § 3147(a), asking this Court to amend the Order imposing conditions for her release pending trial. That Order was entered August 31, 1981, by Magistrate Phyllis Halsey Atkins. It conditions said defendant's release on the posting of bail in the sum of $600,000, cash or corporate surety. Further, if she is released she must stay in Fresno County, California, surrender her passport, if any, and refrain from applying for a new one, and avoid contact with any of her codefendants except in the presence of their attorneys and in connection with the preparation of their defenses.

The charges have arisen from the alleged extortion scheme against Harvey's resort hotel and casino at Lake Tahoe. A bomb placed in the hotel building detonated accidentally, causing property damage estimated as high as twelve million dollars.

Ms. Williams' application for review of the conditions, particularly the amount of bail, was heard by Magistrate Atkins on September 2, 1981. She was represented by Brent T. Adams, Esq. On September 3, 1981, Magistrate Atkins handed down her Order denying the application. Both orders of the Magistrate were in writing and set forth the reasons for her decisions.

A hearing on the instant motion was held September 14, 1981, with Mr. Adams arguing on behalf of the defendant and Assistant U. S. Attorney Edward R. J. Kane representing the United States. Although the defendant was present, she did not testify. The same was true of the hearing before Magistrate Atkins; that is, no evidence was sought to be introduced by either side through the use of witnesses. The factual allegations were presented by the respective counsel during the course of their arguments.

■ Despite the frequency of bail proceedings, very little has been published concerning the standards to be followed by a district court in a § 3147(a) proceeding. For example, the ALR annotation which discusses the construction and application of the section does not comment specifically on any standards that must be adhered to. See 8 ALR Fed. 586, Anno.: Bail Reform Act-Pretrial Bail. It is universally accepted that consideration must be given the factors which the magistrate utilizes in deciding what conditions of release will reasonably assure the defendant's appearance in court. *See Government of Virgin Islands v. Bolones*, 427 F.2d 1135 (3rd Cir. 1970). Those factors are listed in 18 U.S.C. § 3146(b), and

include family ties, employment, length of residence, record of appearance at court proceedings, etc.

In *Shackleford v. United States*, 383 F.2d 212, 215 (D.C.Cir.1967), the opinion indicates that the district court "is called on to review the original action." This is premised largely on the requirement set forth in 18 U.S.C. § 3146(d) that, unless the conditions are amended by the magistrate and the defendant is thereupon released, the magistrate "shall set forth in writing the reasons for requiring the conditions imposed." Certainly, judicial review is facilitated greatly when the reasons underlying the order below are set forth in writing. Nevertheless, after a most thorough consideration of the issue, Judge Karlton, in *United States v. Smith*, 87 F.R.D. 693 (E.D.Cal.1980), decided that an appellate scope of review is not proper. He held that the district court must exercise a de novo review of bail conditions. An important reason discussed by Judge Karlton is the shortness of time for preparation. The information that the defendant gathers and presents to the magistrate at the bail hearing must be obtained with great haste, sometimes within twenty-four hours. By the time he is heard by the district court, additional information may be available that is relevant to what conditions of release will assure subsequent court appearance by the defendant. Judge Karlton, therefore, feels that it would be inappropriate to provide only a limited review at the district court level.

All relevant facts and circumstances are properly used by the Court in reaching its decision under 18 U.S.C. § 3147(a). *See United States v. Melville*, 309 F.Supp. 822 (S.D.N.Y.1970). However, the undersigned is convinced that the Magistrate's Order, including the reasons set forth therein, are not to be given the short shrift that a de novo consideration might seem to imply. The basis for the decision of the district court in deciding a motion to amend conditions of release under 18 U.S.C. § 3147(a) appears to lie somewhere between a de novo determination and an appellate review. The Magistrate's Order represents the product of intense effort and considera-

tion by an experienced and conscientious judicial officer. In this particular case there was no live testimony by any witness. Therefore, the demeanor of witnesses is not involved. However, the opportunity to observe the demeanor of witnesses may place the magistrate in a better position than the district court to fix conditions of release.

■ Except to the extent that any additional information presented at the district court hearing on the motion to amend requires different conclusions to be reached, this Court starts from the proposition that the decision of the Magistrate is correct, unless the Magistrate's reasons are erroneous as a matter of law or the factual findings underlying the Magistrate's decision are not supported by substantial evidence. In considering the motion the Court should analyze, and in this case has analyzed, the entire record and the Magistrate's findings, reasons and decision in the light of each of the tests set forth in 18 U.S.C. § 3146(b) and other tests which seem appropriate here. Utilizing these standards, the motion of defendant Williams is now examined.

■ The nature and circumstances of the offense charged would weigh in the scales as an indication that the defendant is apt to flee. As the Magistrate pointed out, this factor may in and of itself, in this case, give rise to an inference that the defendant is likely to flee. *United States v. Honeyman*, 470 F.2d 473 (9th Cir. 1972). The offenses with which the defendant is charged carry maximum penalties (in addition to substantial fines) of 40 years imprisonment. The Magistrate concluded that the 47-year old defendant might view the potential sentence as virtually a life sentence.

■ The weight of the evidence against the accused is also an indication that she may flee. However, the weight of the evidence is to be accorded less weight than the other factors. *Id.* Defendant Williams appears to have a considerable involvement in the case. The Government alleges that she not only typed the ransom note but assisted in the wording of it. She is claimed to be one of those who helped to

pack the dynamite into the bomb; assisted in rehearsals of the loading of the bomb for transportation; and participated in the aborted pickup of the ransom money. She has given a statement, according to the Government, which might in the view of some be interpreted as an admission of her involvement in the alleged crime. Thus, in the present status of the case, the defendant could well feel that her conviction is not a remote possibility.

■ Ms. Williams' family ties do not support a conclusion that she is likely to appear voluntarily at subsequent proceedings herein. While her father and stepmother and most of her children and grandchildren reside in the Fresno, California, area, she has a closer relationship with codefendant John Birges, Sr. Defendant Williams apparently has been living with Mr. Birges for several years. Allegedly, she acquired the home in which she resides from Mr. Birges for $30,-000 and the cancellation of a note, the amount of which is unknown, together with the promise to allow Mr. Birges to live there the remainder of his life. These facts do not add up to the kind of "family" ties that assure appearance.

Ms. Williams has no present employment and, as the Magistrate pointed out, the circumstances of the accusation and arrest for these crimes may make it extremely difficult for her to stay in the Fresno community. This indicator is in the direction of flight, although defendant does appear to have the intelligence and experience which ought to enable her to obtain some kind of work.

She does have some financial resources. The equity in her home may be difficult to realize upon without the assistance of John Birges, Sr. However, there is no apparent reason why he would not assist her to dispose of that property or to borrow upon it. She also has approximately $7,000 which it is presumed will be available to her from a retirement fund.

■ The character of Ms. Williams up until the time of her involvement in this case appears to be exemplary. She has no record of arrests or convictions and served ably and faithfully as a probation officer in Fresno County. This factor would have to weigh in favor of her appearances at subsequent proceedings herein. Also, the statement that she has given to the government agents may also be interpreted as an indication that she will appear.

Her mental condition does not indicate that she would flee.

Defendant Williams has no residential ties to the Nevada judicial district but does appear to have substantial ties to the Fresno area where she has lived for a period of approximately 20 years.

■ Ms. Williams has no record of failure to appear at court proceedings. She now argues that she had every opportunity to leave during the investigation (which was known to her) of the alleged crime, but did not do so. One of Mr. Birges' sons has given a statement to government agents indicating that when the ransom money was received Ms. Williams and codefendant John Birges, Sr., intended to transport it to Europe. Six hundred pounds of dynamite and twenty switches of the type used in the bomb at Harvey's were found on her property upon execution of search warrants. The Government also claims that it has evidence that she and codefendant John Birges, Sr., were planning an additional extortion plot against Harvey's or against the Bank of America in San Francisco. The Magistrate justifiably concludes that under these circumstances the fact that the defendant did not flee during the past year, while the focus of investigation was upon her, is not necessarily indicative she will not leave in the future.

■ It is quite clear from the record that release of the defendant pending trial on her personal recognizance or upon the execution of an unsecured appearance bond will not reasonably assure her appearance as required. It does not appear that there is any person or organization in whose custody she could be placed for supervision or that restrictions on travel, association or place of abode will be adequate to assure

appearance. The execution of an appearance bond with a deposit in the registry of the Court is not sufficient to secure appearance here. No one or combination of the aforementioned possible conditions of release will assure the defendant's appearance.

The Court finds that the execution of a corporate surety bond is required to assure defendant Williams' appearance at the further proceedings in this case. However, despite the validity of the Magistrate's reasoning as to the need for a cash or corporate surety bond, which this Court accepts, it appears that the amount of the bond may be reduced and the appearance of the defendant, nevertheless, reasonably assured.

IT IS, THEREFORE, HEREBY ORDERED that the conditions of release for defendant ELLA JOAN WILLIAMS are amended so that she shall be subject to release upon posting bail in the amount of $125,000, cash or corporate surety. The other conditions of release set forth by the Magistrate in her order of August 31, 1981, shall remain in full force and effect.