UNITED STATES of America, Plaintiff,

v.

John BIRGES, Sr., John Waldo Birges, Jr., James William Birges, Ella Joan Williams, Willis "Bill" Brown, and Terry Lee Hall, Defendants.

No. CR–R–81–39–ECR.

United States District Court, D. Nevada.

Oct. 2, 1981.

Edward R. J. Kane, Asst. U. S. Atty., Reno, Nev., for plaintiff United States of America.

Brent Adams of Adams & Johnson, Reno, Nev., for defendant, Ella Joan Williams.

William Puzey, Reno, Nev., for defendant, Willis "Bill" Brown.

Fred Atcheson, Reno, Nev., for defendant, Terry Lee Hall.

Martin H. Wiener, Asst. Federal Public Defender, Reno, Nev., for defendant, John Birges, Sr.

## ORDER

EDWARD C. REED, Jr., District Judge.

Defendant John Birges, Sr., has filed a motion, pursuant to 18 U.S.C. § 3147(a), asking this Court to amend the Order imposing conditions for his release pending trial. That Order was entered August 31, 1981, by Magistrate Phyllis Halsey Atkins. It conditions said defendant's release on the posting of bail in the sum of $2,000,000, cash or corporate surety. Further, if he is released he must live in Washoe County, Nevada, surrender his passport, if any, and refrain from applying for a new one, and avoid contact with any of his codefendants except in the presence of their attorneys and in connection with the preparation of their defenses.

The charges have arisen from the alleged extortion scheme against Harvey's Resort Hotel and Casino at Lake Tahoe. The extortion plot involved placing of a bomb containing approximately one-half ton of dynamite in the hotel/casino. Although the amount demanded in the extortion letter was tendered, it was not picked up. The bomb detonated accidentally, causing millions of dollars damage to the building.

Mr. Birges' application for review of the conditions, particularly the amount of bail, was heard by Magistrate Atkins on September 2, 1981. He was represented by Assistant Federal Public Defender Martin H. Wiener. On September 3, 1981, Magistrate Atkins handed down her Order denying the application. Both orders of the Magistrate were in writing and set forth the reasons for her decisions.

A hearing on the instant motion was held September 14, 1981, with Mr. Wiener arguing on behalf of the defendant and Assistant U.S. Attorney Edward R.J. Kane representing the United States. Although the defendant was present, he did not testify. The same was true of the hearing before Magistrate Atkins; that is, no evidence was sought to be introduced by either side through the use of witnesses. The factual allegations were presented by the respective counsel during the course of their arguments.

■ Despite the frequency of bail proceedings, very little has been published concerning the standards to be followed by a district court in a § 3147(a) proceeding. For example, the ALR annotation which discusses the construction and application of the section does not comment specifically on any standards that must be adhered to. See 8 ALR Fed. 586, Anno: Bail Reform Act-Pretrial Bail. It is universally accepted that consideration must be given the factors which the magistrate utilizes in deciding what conditions of release will reasonably assure the defendant's appearance in court. *See Government of Virgin Islands v. Bolones*, 427 F.2d 1135 (3rd Cir. 1970). Those factors are listed in 18 U.S.C. § 3146(b), and include family ties, employment, length of residence, record of appearance at court proceedings, etc.

In *Shackleford v. United States*, 383 F.2d 212, 215 (D.C.Cir.1967), the opinion indicates that the district court "is called on to review the original action." This is premised largely on the requirement set forth in 18 U.S.C. § 3146(d) that, unless the conditions are amended by the magistrate and the defendant is thereupon released, the magistrate "shall set forth in writing the reasons for requiring the conditions imposed." Certainly, judicial review is facilitated greatly when the reasons underlying the order below are set forth in writing. Nevertheless, after a most thorough consideration of the issue, Judge Karlton, in *United States v.*

*Smith*, 87 F.R.D. 693 (E.D.Cal.1980), decided that an appellate scope of review is not proper. He held that the district court must exercise a de novo review of bail conditions. An important reason discussed by Judge Karlton is the shortness of time for preparation. The information that the defendant gathers and presents to the magistrate at the bail hearing must be obtained with great haste, sometimes within twenty-four hours. By the time he is heard by the district court, additional information may be available that is relevant to what conditions of release will assure subsequent court appearance by the defendant. Judge Karlton, therefore, feels that it would be inappropriate to provide only a limited review at the district court level.

All relevant facts and circumstances are properly used by the Court in reaching its decision under 18 U.S.C. § 3147(a). *See United States v. Melville*, 309 F.Supp. 822 (S.D.N.Y.1970). However, the undersigned is convinced that the Magistrate's Order, including the reasons set forth therein, are not to be given the short shrift that a de novo consideration might seem to imply. The basis for the decision of the district court in deciding a motion to amend conditions of release under 18 U.S.C. § 3147(a) appears to lie somewhere between a de novo determination and an appellate review. The Magistrate's Order represents the product of intense effort and consideration by an experienced and conscientious judicial officer. In this particular case there was no live testimony by any witness. Therefore, the demeanor of witnesses is not involved. However, the opportunity to observe the demeanor of witnesses may place the magistrate in a better position than the district court to fix conditions of release.

■ Except to the extent that any additional information presented at the district court hearing on the motion to amend requires different conclusions to be reached, this Court starts from the proposition that the decision of the Magistrate is correct, unless the Magistrate's reasons are erroneous as a matter of law or the factual findings underlying the Magistrate's decision are not supported by substantial evidence. In considering the motion the Court should analyze, and in this case has analyzed, the entire record and the Magistrate's findings, reasons and decision in the light of each of the tests set forth in 18 U.S.C. § 3146(b) and other tests which seem appropriate here. Utilizing these standards, the motion of defendant Birges is now examined.

■ The nature and circumstances of the offense charged would weigh in the scales as an indication that the defendant is apt to flee. *United States v. Honeyman*, 470 F.2d 473 (9th Cir. 1972). As the Magistrate pointed out in her Order of August 31, 1981, "the nature and circumstances here seem so great and the weight of evidence so extensive that they must be given considerable weight...". The defendant is facing a maximum $40,000 fine and 40 years in prison, which at the age of 53 is, as noted by the Magistrate "probably the remainder of his life."

■ At all times after the bomb had been placed in the building and until its detonation it constituted a grave danger to life and property. Although *Honeyman* opines that the least weight should be given to the weight of the evidence against the accused, the Magistrate has aptly observed that in this particular case, the nature of the circumstances of the crime should be given more consideration in the weighing process than might be appropriate in other cases.

■ The defendant does not have family ties which would indicate that he will appear. His two sons will apparently become witnesses against him at his trial on these charges. His wife is deceased. He has a mother in Hungary whom he has considered visiting. Defendant displays more family connection with her than with other family members.

■ The defendant has no employment. He has been supported by his codefendant Ella Joan Williams for some time. While in times past he was employed and successful in business, there is nothing by way of his recent employment record to indicate that he will stay rather than flee.

■ The defendant shows virtually no assets which would tie him to the community in which he has been residing. On the other hand his lack of assets might arguably be an indication that he cannot raise the funds to flee if released. He does appear to have a sort of interest in the house belonging to Ella Joan Williams in which he has been residing, whereby he can reside there the rest of his life. In cooperation with Mrs. Williams this interest could be released for payment of a sum of money if the house were to be sold or an additional loan or refinancing of it obtained. It is arguable that the agreement giving him the right to live in the house would be a reason to stay in Fresno. Defendant has made some very recent contacts in an effort to borrow money to return to Hungary. These efforts to borrow the money came at the time the F.B.I. was questioning his two sons in connection with this case. In her decision the Magistrate points out that the defendant was a wealthy man in recent past and her belief that he has access to considerably more funds than shown in his affidavit filed herein. Defendant is a man of considerable ingenuity as reflected in his past personal history. The Magistrate concludes "he is capable of flight under very adverse circumstances [as] demonstrated by his escape through eastern European countries to the United States after his release from Soviet imprisonment and later arrest for participation in the Hungarian revolution in 1956." It is claimed that he told his sons that he was going to return to Europe as soon as the Harvey's extortion plot was completed. It is reasonable to believe that, if released, defendant would be able to obtain sufficient funds to flee.

■ Defendant has no previous arrest or conviction record. This is an indication the defendant would stay, rather than flee.

■ The defendant's mental condition is apparently normal; an indicator that he would stay. On the other hand, the Magistrate points out that some of the statements he is alleged to have made indicate that there is "a great deal lacking in defendant's character." Here the Magistrate refers to the defendant's claimed threat to codefendants' lives if they testify against him. This factor militates against his future appearance herein.

■ Defendant has lived in the Fresno area for approximately 24 years and the length of his residence in that community would indicate that he would not flee. While he has not failed to appear at court proceedings, he has had no occasion to do so.

■ The Magistrate found that the defendant apparently believes he is going to be killed by the people who put up the $500,000 reward for the arrest and conviction of the perpetrators of the Harvey's extortion. This belief in the mind of the defendant is an indicator that he may flee for what he thinks is his own safety.

■ The fact that the defendant, although under obvious investigation by the F.B.I., did not flee to avoid prosecution is outweighed by the fact that apparently he may have stayed at the Fresno residence because of a plan to construct an additional bomb for a further extortion attempt at Harvey's or at the Bank of America in San Francisco. Upon execution of a search warrant on the premises in which the defendant had been residing, six hundred pounds of dynamite and twenty switches, similar to those used in the Harvey's bomb, were found.

■ There is an additional factor to be weighed in this particular case and this is involved in the claimed threat of defendant against his codefendants. If he is released it appears to this Court that the process of this Court may be threatened. The Magistrate in this regard has stated: "Considering the allegation that the defendant has threatened anyone who double-crossed him, or told of his involvement, this appears to be a time that the court might consider denying bail to protect its own process based on *United States v. Gilbert*, 425 F.2d 490 (1969) and *United States v. Carbo*, 369 U.S. 868, 82 S.Ct. 662, 7 L.Ed.2d 769 (1962). In the latter case, Justice Douglas pointed

out that bail is not literally due everyone who is charged with a non-capital crime, where witnesses or prospective witnesses have been threatened."

All in all, it does appear that defendant may pose a very serious threat to the process of the Court if he is released.

 It is quite clear from the record that release of the defendant pending trial on his personal recognizance or upon the execution of an unsecured appearance bond will not reasonably assure his appearance as required. It does not appear that there is any person or organization in whose custody he could be placed for supervision or that restrictions on travel, association or place of abode will be adequate to assure appearance. The execution of an appearance bond with a deposit in the registry of the Court is not sufficient to secure appearance here. No one or combination of the aforementioned possible conditions of release will assure the defendant's appearance.

The Court finds that the execution of a corporate surety bond is required to assure defendant Birges' appearance at the further proceedings in this case.

The Magistrate's analysis of bail is very precise and amply covers all of the considerations which should be made in such a case. This Court has reviewed the entire record together with the two orders the Magistrate previously issued and has also considered matters brought to its attention at the hearing held in respect to bail for defendant. The Magistrate's findings appear to be correct in all the circumstances.

IT IS, THEREFORE, HEREBY ORDERED that defendant's motion to amend conditions of release is hereby denied.