Robert Nelson, Asst. Federal Public Defender, San Francisco, Cal., for defendant.

Anne Kenner, Asst. U.S. Atty., San Francisco, Cal., for plaintiff.

**UNITED STATES of America**

v.

**Steven Alexander HARRIS.**

**No. CR–90–0061–VRW.**

United States District Court,
N.D. California.

Feb. 28, 1990.

ORDER

WALKER, District Judge.

Defendant Steven Alexander Harris was charged in a criminal complaint filed January 30, 1990 with a violation of 18 U.S.C. § 2113(a) (bank robbery). At the arraignment that day, Harris was remanded to custody pending a pre-trial detention hearing pursuant to 18 U.S.C. § 3142(a), which was held before a magistrate of this court on February 2, 1990. The magistrate reviewed the entire record of the case, including the government's proffer of evidence, and found that Harris' criminal record, history of drug use and lack of employment constituted clear and convincing evidence that he was a danger to the community and that there was no condition or combination of conditions that would assure the safety

of the community if he were to be released. Accordingly, by written order dated February 5, 1990, the magistrate ordered that Harris be detained without bail pursuant to 18 U.S.C. § 3142(e) pending disposition of the case.

On February 7, 1990, Harris was indicted on one count of armed bank robbery in violation of 18 U.S.C. § 2113(d), two counts of bank robbery and one count of attempted bank robbery in violation of 18 U.S.C. § 2113(a), one count of use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1), and one count of conspiracy in violation of 18 U.S.C. § 371.

Harris moved this court on February 13, 1990 for an order revoking the magistrate's order of detention on the grounds that he is not a danger to the community and that there are conditions of release that reasonably assure the safety of the community and his appearance in court. Harris argues that the magistrate relied excessively on the weight of the evidence against him on the criminal charges and that he would enter a residential drug treatment program if released. Moreover, since his aunt is willing to post her house, which is willed to Harris' son, as security for bail of $100,000, Harris asserts that his appearances in court are guaranteed.

In its opposition to Harris' motion, the government stated as a preliminary matter that this court should conduct a *de novo* review of the magistrate's findings and conclusions. Consequently, according to the government, the issue before the court is the same as that addressed by the magistrate at the pre-trial detention hearing: whether there is any condition or combination of conditions of release that will reasonably assure the appearance of the defendant at trial and the safety of any other person and the community. At a hearing on Harris' motion on February 16, 1990,

the court requested supplemental briefs on the issue of the standard of review a district court is to apply when ruling on a motion to revoke a magistrate's pretrial detention order.

■ Having considered the parties' oral arguments at the hearing and the papers submitted, the court finds for the reasons stated in Part I below that a magistrate's detention order should not be revoked unless its findings of fact are clearly erroneous or its conclusions contrary to law. The court adopts the standard of review set forth in *United States v. Motamedi*, 767 F.2d 1403 (9th Cir.1985). Based on an independent examination of the findings made by the magistrate and the information presented in this court, the court finds that the magistrate's detention order was neither clearly erroneous nor contrary to law. Accordingly, for the reasons set forth in Part II below, the court finds that Harris should be detained pending trial because no condition or combination of conditions of release will reasonably assure the safety of the community.

## I. THE STANDARD OF REVIEW.

### A. *Pre-trial Detention Orders and the Provision for Review by the District Court.*

Under 18 U.S.C. § 3142, a judicial officer may order a person detained before trial if after a hearing it is determined that no condition or combination of conditions will reasonably assure the appearance of the person and the safety of any other person and the community. A United States magistrate has the power to issue such an order. 18 U.S.C. § 3041.[1] A person who has been ordered detained by a magistrate may file a motion for revocation or amendment of the order with the court having

---

**1.** Concurrent authority is granted under 28 U.S.C. § 636(a)(2) (1982 and Supp. V): "Each United States magistrate serving under this chapter shall have within the territorial jurisdiction prescribed by his appointment ... the power to ... issue orders pursuant to section 3142 of title 18 concerning release or detention of persons pending trial." The government notes that 28 U.S.C. § 636(b)(1)(A) suggests the appli-

cation of a "clearly erroneous" standard of review. However, it appears that such a standard is meant to be used only when the district court is reconsidering pretrial matters decided by a magistrate pursuant to § 636(b)(1)(A), not matters decided pursuant to § 636(a). *See United States v. Beesley*, 601 F.Supp. 82, at 83 (N.D.Ga. 1984).

original jurisdiction over the offense. 18 U.S.C. § 3145(b).[2] Neither the language of the review provision nor its legislative history provides guidance as to the standard of review to be applied by the district judge. *See* S.Rep. No. 98–225, 98th Cong., 2d Sess. 29–30, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3212–3213.

### B. *Judicial Interpretations of Section 3145(b).*

#### 1. *Circuit Court Opinions.*

The parties cite numerous opinions of the courts of appeal supporting their view that a district judge must review a magistrate's order *de novo* in the event of a § 3145(b) motion to revoke or amend. *E.g., United States v. Leon,* 766 F.2d 77 (2d Cir.1985); *United States v. Delker,* 757 F.2d 1390 (3d Cir.1985); *United States v. Williams,* 753 F.2d 329 (4th Cir.1985); *United States v. Fortna,* 769 F.2d 243 (5th Cir.1985); *United States v. Maull,* 773 F.2d 1479 (8th Cir.1985) (en banc); *United States v. Hurtado,* 779 F.2d 1467 (11th Cir.1985); *United States v. King,* 849 F.2d 485 (11th Cir. 1988). This court finds these cases unpersuasive for the simple reason that none truly stands for the proposition for which it is cited. A brief survey of these cases illustrates their deficiency.

To begin with, five of the seven cases in the above group rely principally on the other cases and account for nine citations to other cases in the same group.[3] One case in particular merely *mentions* the concept of a *de novo* hearing, without passing in any way on its appropriateness.[4] Six of the seven cases either rely on *United*

---

2. 18 U.S.C. § 3145(b) provides:

If a person is ordered detained by a magistrate, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

3. Of the remaining two opinions, *Williams* cites no cases and in fact does not in any way stand for *de novo* review, see note 4 below, and *Delker* preceded the remaining opinions and thus could not have cited them.

*Leon* cites *Delker, Williams* and *United States v. Beesley,* 601 F.Supp. 82 (N.D.Ga.1984). The court in *Beesley* adopted the "standard" set forth in *United States v. Thibodeaux,* 663 F.2d 520, at 522 (5th Cir.1981), in which the Fifth Circuit viewed the Bail Reform Act of 1966 as conferring a "responsibility" on the district court "to reconsider the conditions of release fixed by another judicial officer ... as unfettered as it would be if the district court were considering whether to amend its own action." See text at section I.B.2 for a discussion of *Thibodeaux.*

*Fortna* cites *Thibodeaux, Delker* and *United States v. Freitas,* 602 F.Supp. 1283 (N.D.Cal. 1985). The opinion in *Freitas* merely states that the cases under 18 U.S.C. § 3147(a), the predecessor of current 18 U.S.C. § 3145:

are in general agreement that the district court should exercise independent consideration of all the facts properly before it on a motion to amend a detention order. *U.S. v. Smith,* 87 F.R.D. 693, 699 (E.D.Cal.1980), affirmed without opinion, 734 F.2d 22 (9th Cir.), cert. denied, 469 U.S. 867 [105 S.Ct. 211, 83 L.Ed.2d 142] and 469 U.S. 887 [105 S.Ct. 262, 83 L.Ed.2d 198] (1984); *U.S. v. Zuccaro,* 645 F.2d 104, 106 (2d Cir.), cert. denied, 454 U.S. 823, [102 S.Ct. 110, 70 L.Ed.2d 96] (1981); *U.S. v. Thibodeaux,* 663 F.2d 520, 522 (5th Cir.1981); *U.S. v. Birges,* 523 F.Supp. 472, 475 (D.Nev.1981).

*Freitas,* 602 F.Supp. at 1293. *Zuccaro* is inapposite. *Birges* is discussed in the text accompanying note 8 and *Smith* is discussed at note 9.

*Maull* cites *Delker, Thibodeaux, Zuccaro* and *United States v. James,* 674 F.2d 886 (11th Cir. 1982). *James* relies on *Zuccaro* in holding that a district judge has the power to amend conditions of release, notwithstanding that he was not the releasing officer under former 18 U.S.C. § 3146(e).

*Hurtado* cites *Maull, Leon, Delker, Williams* and *Beesley* and relies on *Thibodeaux. King* cites *Hurtado.*

4. "Moreover, although the motion for review of the magistrate's detention order, pursuant to 18 U.S.C. § 3145(b), technically was transformed into a *de novo* detention hearing under section 3142(f), no additional evidence on the issue of dangerousness or lack thereof was introduced." *Williams,* 753 F.2d at 333. "Moreover, in most cases, a trial court's review of a transcript of proceedings would, either as part of a *de novo* detention hearing, or as part of a review of a detention order under 18 U.S.C. § 3145(b) be sufficient to withstand appellate review." *Id.* at 334.

An opinion whose only discussion of a district court's review of a magistrate's order are these two sentences can hardly be cited as authority for a *de novo* standard of review. Yet several subsequent opinions do just that. *E.g., Leon; Hurtado; United States v. Clark,* 865 F.2d 1433, at 1436, 1437 (4th Cir.1989); *United States v. Ramey,* 602 F.Supp. 821, at 822 (E.D.N.C.1985), affirmed, 791 F.2d 317 (4th Cir.1986).

*States v. Thibodeaux,* 663 F.2d 520 (5th Cir.1981), or cite cases that do so. If the assertion that a district court must review a magistrate's order *de novo* can claim nothing more than these cases as support, it is truly a house of cards. Repeated reliance on less than authoritative cases has displaced careful consideration of the appropriate standard of review. A reader of these cases is left questioning whether words have lost their meaning.[5]

### 2. *Thibodeaux and the Predecessor to Section 3145(b).*

A brief history of the review provision of the Bail Reform Act aids an examination of *Thibodeaux.* The predecessor of current 18 U.S.C. §§ 3141–3150 was the Bail Reform Act of 1966 (the "1966 Act"). The 1966 Act contained a review provision codified at 18 U.S.C. § 3147(a)[6] that was almost identical to current § 3145(b), with the only significant change under the new provision being that the defendant may move to "revoke" as well as "amend" a magistrate's order.

In *Thibodeaux,* a case widely interpreted as holding that a district judge must undertake a *de novo* review of a magistrate's detention order, the Fifth Circuit vacated the denial by a district judge of a "motion to review" a magistrate's detention order under § 3147 of the 1966 Act on the grounds that the district court, which had found that the order was "supported by the proceedings below," had used the wrong standard of review. The district court had relied on the standard set forth in § 3147(b), which governed appeals of the

district court's action to the court of appeals. The relevant language of the opinion of the court of appeals follows:

> Except for requiring a prompt determination of a motion to amend, subsection (a) does not suggest how a judge of the court of original jurisdiction is to consider whether to amend an order of another judicial officer fixing conditions of release.

> \* \* \* \* \* \*

> Few reported decisions have construed the ambit of the district courts' amendment authority under 18 U.S.C. § 3147(a). Thus district courts have assumed, without stating so explicitly, that their right to amend the magistrate's order was broader than the appellate review specified in 18 U.S.C. § 3147(b). *E.g. United States v. Ellis DeMarchena,* 330 F.Supp. 1223, 1226–27 (S.D.Cal.1971). This is the correct view. *See Grimes v. United States,* 394 F.2d 933 (D.C.Cir. 1967). The statutory scheme adopted in 18 U.S.C. § 3147 confers a responsibility on the district court to reconsider the conditions of release fixed by another judicial officer under 18 U.S.C. § 3146(d) as unfettered as it would be if the district court were considering whether to amend its own action. It is not constrained to look for abuse of discretion or to defer to the judgment of the prior judicial officer.

*Thibodeaux,* 663 F.2d at 522.

As noted above, this language has been relied upon directly or indirectly in nearly

---

**5.** The idea of *de novo* review at the district court level would necessarily seem to imply a *de novo* hearing, with no consideration at all given to what transpired before the magistrate. As when a motion for a trial *de novo* is granted, *de novo* review suggests starting the entire process afresh, for the term *"de novo,"* like the word "unique," is not subject to qualification. Hence any reliance on or consideration of the findings or conclusions of the magistrate means that some less stringent standard of review is being employed. Yet the Eleventh Circuit opines that *de novo* review only requires a district court to exercise "independent consideration" of the facts, without the need for a new hearing. *United States v. Gaviria,* 828 F.2d 667, 670 (11th Cir.1987). The alchemy that transforms *de novo* review into mere "independent" review is

practiced by a number of the appellate courts considering the issue. *E.g., Maull,* 773 F.2d at 1484–85; *Fortna,* 769 F.2d at 249; *Delker,* 757 F.2d at 1394 ("In most cases the district court will find it useful to consider carefully the decision and reasoning of the magistrate").

**6.** Former 18 U.S.C. § 3147(a) provided:

A person who is detained ... by a judicial officer, other than a judge of the court having original jurisdiction over the offense with which he is charged or a judge of a United States court of appeals or a Justice of the Supreme Court, may move the court having original jurisdiction over the offense with which he is charged to amend the order. Said motion shall be determined promptly.

every opinion under § 3145(b) as support for a *de novo* standard of review. This court, however, finds no such support in either the language of *Thibodeaux* or the cases cited therein.[7] On the contrary, the "unfettered" district court mentioned in *Thibodeaux* would appear to be free to apply any standard of review that it desires. Moreover, it does not seem logical, much less in keeping with policies of judicial economy, to assume that a district court must necessarily act *de novo* in "considering whether to amend its own action." If significant new information tending to rebut the government's position that the defendant is a flight risk or danger to the community is presented, perhaps the district court should conduct a new § 3142 hearing and disregard the magistrate's findings and conclusions. On the other hand, if a defendant's motion to amend (or revoke) presents no information not presented to the magistrate, must the hearing process begin anew?

A plausible response in the negative may be found in the opinions in *United States v. Birges*, 523 F.Supp. 468 and 523 F.Supp. 472 (D.Nev.1981).[8] In these cases, the defendants filed motions requesting the dis-

trict court to amend a magistrate's order of release conditioned, *inter alia*, on posting bail of $600,000 and $2,000,000, respectively. The district court granted the motion of the first defendant, reducing the bail required to $125,000, but denied the second defendant's motion. The court, while noting the opinion in *United States v. Smith*, 87 F.R.D. 693 (E.D.Cal.1980), affirmed without opinion, 734 F.2d 22 (9th Cir.), cert. denied, 469 U.S. 867, 105 S.Ct. 211, 83 L.Ed.2d 142 (1984),[9] concluded that a magistrate's order,

> including the reasons set forth therein, is not to be given the short shrift that a de novo consideration might seem to imply. The basis for the decision of the district court in deciding a motion to amend conditions of release under 18 U.S.C. § 3147(a) appears to lie somewhere between a de novo determination and an appellate review. The Magistrate's Order represents the product of intense effort and consideration by an experienced and conscientious judicial officer.

> \* \* \* \* \* \*

Except to the extent that any additional information presented at the district

---

**7.** In *Ellis DeMarchena*, a magistrate's order reducing bail from $125,000 to $50,000 specified that if bail was secured by cash, the magistrate might hold a hearing to determine the source of the funds, but if a corporate surety bond were posted, no such hearing would be conducted. A corporate surety bond was in fact posted with the court. Upon motion by the government to increase the amount of bail and to determine the source of the bond, the district court decided to hold an in camera hearing as to the source of the bond notwithstanding the magistrate's previously expressed disinclination to do so. *Ellis DeMarchena*, 330 F.Supp. at 1226–27. No mention whatsoever is made either of standards of review or any of the provisions of the Bail Reform Act.

*Grimes* held that § 3146(d) of the 1966 Act requires a person ordered released on conditions who is unable, after 24 hours, to satisfy the conditions must first seek review thereof with the judicial officer who originally imposed the conditions. Only then may review pursuant to § 3147(a) be sought with the district court. Thereafter, however, the district court would be free to "entertain all such motions and enter all such orders respecting conditions of release as may be warranted by the circumstances." *Grimes*, 394 F.2d at 939. Both *Ellis DeMarche-*

*na* and *Grimes* involve actions by a district court that went beyond those of the magistrate involved. However, it is a considerable distance, not successfully negotiated by *Thibodeaux* and its admirers, from noting that a district court is not bound by a magistrate's actions to asserting that the magistrate is not due any deference.

**8.** The opinions are identical except as to the discussions relating to the rulings on the defendants' motions. No reason was given for publishing the dispositions as separate opinions. Ensuing citations are to the first opinion only.

**9.** This case, also decided under the 1966 Act, holds on rather weak grounds that a district court is to exercise "de novo consideration." The court's conclusion was based on the statute's use of the term "motion" as opposed to "appeal" and inconclusive language in *Wood v. United States*, 391 F.2d 981, at 984 (D.C.Cir. 1968) ("[District judges] have broad discretion to amend the conditions imposed, or to grant release outright"), and *Grimes*. Harris suggests that *United States v. Moore*, 607 F.Supp. 489 (N.D.Cal.1985), decided in this district and mentioning *de novo* review, has settled the issue. However, this court finds *Moore*'s persuasiveness weakened by its reliance on *Smith*.

court hearing on the motion to amend requires different conclusions to be reached, this Court starts from the proposition that the decision of the Magistrate is correct, unless the Magistrate's reasons are erroneous as a matter of law or the factual findings underlying the Magistrate's decision are not supported by substantial evidence.

*Birges*, 523 F.Supp. at 470.

Given the weakness of the cases favoring a *de novo* standard and the uncertainty as to the appropriate standard of review revealed by the discussion above, the court must look elsewhere for guidance on this issue.

### 3. *Motamedi and an Intermediate Standard of Review.*

An appropriate standard of review, although one that has not previously been applied in the context of a district court's review of a magistrate's detention order, may be found in *United States v. Motamedi*, 767 F.2d 1403 (9th Cir.1985). The standard in *Motamedi*, which applies to appellate court review of a district court's order of pretrial detention, is attractive not only because it serves the twin aims of promoting judicial efficiency and affording a criminal defendant due process, but also because it avoids the inconsistency that follows where some courts review only what was presented to the magistrate while others conduct completely new hearings, both in the name of *"de novo"* review.

In *Motamedi*, the defendant, who was arrested for exporting arms without a license, was ordered released by a United States magistrate subject to the posting of a $400,000 secured appearance bond and other conditions. He was subsequently indicted on additional charges and ordered detained before trial. Motamedi moved the district court for revocation of the detention order, and a second hearing was held in which the parties presented the same evidence that had been before the magistrate. The district court concluded that the magistrate's findings were not clearly erroneous and affirmed the detention order. Motamedi appealed, and the Ninth Circuit reversed, ordering release on the financial terms and conditions that had been granted prior to the magistrate's revocation of bail. Shortly thereafter, the Ninth Circuit authorized the district court to increase the amount of the appearance bond to $750,-000, and issued an opinion in support of its order of release.

The court of appeals reviewed the district court's factual findings under a deferential, clearly erroneous standard. *Motamedi*, 767 F.2d at 1405. However, in reviewing an order denying pretrial release, the court noted that it must ensure not only that the factual findings support the conclusions reached, but also that the defendant's constitutional and statutory rights have been respected. *Id.* Accordingly, the Ninth Circuit chose to adopt a standard of review consistent with that applied by Justices of the Supreme Court, who recognize a "nondelegable responsibility to make an independent determination of the merits of the application [citations omitted]."

On the theory that it would be incongruous for a court of appeals to apply a narrower standard of review than that applied by a Circuit Justice, the Ninth Circuit held that the applicable standard is one of deference to the district court's factual findings, absent a showing that they are clearly erroneous, coupled with a right of independent examination of the facts as established by the district court, the findings, and the record to determine whether the district court's order of pretrial detention may be upheld. *Motamedi*, 767 F.2d at 1406. This standard has been adopted by other courts of appeal as well. *See, e.g., United States v. Portes*, 786 F.2d 758, at 762–763 (7th Cir.1985); *Hurtado*, 779 F.2d at 1472–73; *United States v. Provenzano*, 605 F.2d 85, at 92 (3d Cir.1979). Thus the facts are deemed to be established by the district court unless they are clearly erroneous, and the court of appeals then independently considers whether detention is warranted.

A similar rationale exists to support the district court's adoption of such a standard to govern its review of a magistrate's pre-

trial detention order. If the district court adopted a pure "clearly erroneous" standard, it would in effect be reviewing the legal sufficiency of the order more narrowly than would the higher courts. Such a situation creates an incentive to pursue a § 3145(c) appeal to the circuit court that is inconsistent with policies favoring only meritorious appeals. On the other hand, a strict requirement of *de novo* review—in addition to the problems created by inconsistent applications of the standard noted above—both vitiates a magistrate's authority and goes against policies favoring judicial economy that resulted in the delegation of certain matters to magistrates in the first place. Defendants ordered detained by a magistrate would have every incentive to move the district court for revocation of a detention order, even when no new evidence favoring release is to be presented, in the hope that a district judge applying a *de novo* standard might reach a more favorable conclusion. Moreover, the *Motamedi* standard is a serviceable approximation of one "somewhere between" *de novo* and appellate review that the *Birges* court sought.

## II. APPLICATION OF THE BAIL REFORM ACT TO DEFENDANT HARRIS.

■ The court held a hearing on February 16, 1990 on Harris' motion to revoke the magistrate's order of detention. The court has reviewed the entire case record, including the February 7, 1990 indictment and the parties' motion papers, which were not available to the magistrate. The indictment contains the charges of bank robbery, use of a firearm, and conspiracy detailed above.

Harris claims that the government has not met its burden of showing by clear and convincing evidence that he is a danger to the community. He argues that the evidence against him on the criminal charges and his history of drug use, two of the factors relied upon by the magistrate in ordering detention, do not render him a danger to the community because his "skirmishes with the law" have been "few and relatively minor" and because he is willing to enter the Walden House residential drug rehabilitation program. In addition, Harris argues that because his aunt, with whom he has lived for the past twelve years, has agreed to secure bail of $100,000 with her property, he has strong incentives to complete the rehabilitation program, and therefore does not pose a risk of fleeing the jurisdiction. The government responds that the criminal charges against Harris, the evidence, and his history of criminal behavior and drug abuse establish that Harris is both a flight risk and a danger to the community.

The court finds that the magistrate's findings of fact, as contained in the detention order, are not clearly erroneous. The court specifically adopts the findings of fact set forth in the magistrate's detention order. After exercising its right of independent examination of the facts, findings and record as discussed in Part I above, the court determines that they support the magistrate's detention order. In addition, the court finds that the indictment provides probable cause to believe that Harris committed an offense under 18 U.S.C. § 924(c)(1). This establishes a rebuttable presumption under 18 U.S.C. § 3142(e) that no condition or combination of conditions will reasonably assure Harris' appearance and the safety of the community. Although Harris' new-found resolve to treat his drug problem and his aunt's willingness to guarantee his bail as a condition of release are laudable, the court finds that Harris has failed to rebut this presumption.

Accordingly, the motion to revoke the detention order is denied, and Harris is hereby ordered committed to the custody of the United States Marshal to be held without bail pending disposition of this case.