**UNITED STATES of America, Plaintiff,**

v.

**Adalberto FIANDOR, Defendant.**

No. 94–0666–CR.

United States District Court,
S.D. Florida,
Miami Division.

Jan. 13, 1995.

Donald Chase, Asst. U.S. Atty., Miami, FL, for plaintiff.

Reemberto Diaz, Diaz & Batista, P.A., Hialeah, FL, for defendant.

K. MICHAEL MOORE, District Judge:

A previously convicted narcotics defendant was arrested on narcotics charges after agreeing with an undercover officer to carry out a drug ripoff while utilizing law enforcement equipment. A magistrate judge released the defendant on bond because he had voluntarily surrendered himself to federal authorities. The Government appeals this decision, seeking pretrial detention because the defendant poses a danger to the community.

## I. Factual background

Defendant Adalberto Fiandor is under indictment for conspiracy to possess with intent to distribute 40 kilograms of cocaine, 21 U.S.C. § 841(a)(1), and use of a firearm in relation to a drug trafficking crime, 18 U.S.C. § 924(c). Because Fiandor has a prior narcotics conviction, he faces a 25–year mandatory minimum term of incarceration if convicted of both crimes.

The evidence in the record [1] reveals that, on November 30, 1994, a confidential informant introduced Fiandor to an undercover detective posing as a member of a drug trafficking gang. The detective offered to tell Fiandor the location of his gang's stash house so that Fiandor could steal cocaine hidden there. The detective demanded 25% of the profits from the sale of the cocaine as payment for this information.

---

1. This evidence consists of the Government's proffer at a December 23, 1994 bond hearing before a magistrate and a December 8, 1994 affidavit attached to the criminal complaint.

When the detective questioned Fiandor about his ability to carry out the robbery, Fiandor confessed to committing prior home invasions. He described two such instances: in one, he stole approximately $255,000; in the other, he stole an undetermined amount of cash and cocaine. Fiandor explained that he used police gear and rental cars simulating police vehicles to effectuate his crimes. He added that he normally worked with two or three associates.

The detective advised Fiandor that the stash house contained approximately 50 kilograms of cocaine and could be robbed within a few days. Two days later, he called Fiandor to tell him that cocaine was present at the stash house. The detective met with Fiandor in a commercial parking lot, whereupon Fiandor left to pick up his partners.

Fiandor returned with Defendant Jorge Sanchez. Defendant Eduardo Torres arrived soon thereafter in another vehicle. The undercover detective informed the three Defendants that approximately 50 kilograms of cocaine were inside the stash house, which possibly was guarded by two individuals. Upon inquiry, the Defendants opened a TWA flight bag to reveal two police raid jackets and two police caps bearing law enforcement insignia. Defendants also showed the detective flex cuffs, handcuffs, two badges—one of which was a Metro Dade Police Department badge—and a police blue light. Defendants assured the detective that they had guns but did not display them.

The detective walked to a pay phone and faked a call to the stash house. He returned to tell Defendants that 10 kilograms had been removed, leaving only 40 kilograms remaining. He then gave the two men a false address for the stash house. As Defendants departed for this location, they were arrested.

A search of Fiandor's car uncovered two loaded 9 mm. pistols, the Metro Dade Police Department badge, and the TWA flight bag, which contained law enforcement caps, a police raid jacket, flex cuffs and handcuffs. A search of Torres' car turned up a .38 revolver, a police-insignia cap, and a carrying-a-concealed-firearm badge.

Fiandor initially appeared before a state court, which released him on a $10,000 bond. When a federal grand jury indicted Fiandor, a warrant was issued for his arrest. FBI agents looked for Fiandor at both his residence and his mother's house but could not find him. Once Fiandor learned of the federal indictment, he voluntarily surrendered himself to federal custody after conferring with his lawyer.

The parties appeared for a bond hearing on December 23. The Government sought pretrial detention solely on the basis of Fiandor's continued threat to the community. It claimed that he posed a danger because of the nature of his alleged crimes, his prior criminal record, and the fact that he had committed the alleged offenses while on parole for his prior narcotics conviction.

Fiandor responded that his voluntary surrender demonstrated that his release would not endanger the community. Accepting this argument, the magistrate permitted pretrial release on bond.[2] The magistrate made clear that, but for Fiandor's voluntary surrender, he would have ordered pretrial detention.

## II. Discussion

The Government appeals the magistrate's denial of pretrial detention, arguing that Fiandor's voluntary surrender does not establish that the community will be safe upon his pretrial release. Review of the magistrate's decision is de novo. *United States v. King*, 849 F.2d 485, 489–91 (11th Cir.1988).[3]

The Bail Reform Act of 1984 provides that a judicial officer shall order pretrial detention of a defendant if no conditions on the defendant's release will reasonably assure

2. Fiandor's mother and girlfriend pledged their residences and a farm, which allegedly had collective equity of $95,000, as collateral for a $100,000 personal bond required by the magistrate. Fiandor also posted a $50,000 corporate bond.

3. Because no additional facts are needed to supplement the record, the Court declines to conduct an evidentiary hearing. *King*, 849 F.2d at 490.

the safety of the community. 18 U.S.C. § 3142(e). Where a defendant is indicted for an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, a rebuttable presumption arises that no condition on pretrial release will reasonably assure the safety of the community. 18 U.S.C. § 3142(e); *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir.1990).

■ The Government is entitled to such a presumption concerning Fiandor's pretrial release. Given Fiandor's prior narcotics conviction, his cocaine conspiracy charge carries a twenty-year mandatory minimum sentence under the Controlled Substances Act.

■ This presumption imposes on Fiandor a burden of production to come forward with evidence that he is not dangerous. *King*, 849 F.2d at 488. This obligation, however, does not shift to Fiandor the Government's burden of persuasion. *Quartermaine*, 913 F.2d at 916. If Fiandor produces evidence that he is not dangerous, the Government must show by clear and convincing evidence that his pretrial release would pose a threat to the community. *King*, 849 F.2d at 488. The presumption initially accorded to the Government does not disappear but "remains in the case as an evidentiary finding militating against release, to be weigh[ed] along with other evidence relative to the factors listed in section 3142(g)." *Id.* (quotation omitted).

■ Fiandor has failed to rebut the statutory presumption of his dangerousness. A defendant's voluntary surrender undoubtedly is probative of whether he or she presents a flight risk. Fiandor has offered no explanation, however, of why voluntary surrender also should suggest that a presumptively dangerous person will not threaten public safety upon his or her temporary return to the street.

Nor can this Court provide one. While a defendant may believe it futile to run from police once a crime is brought to light, he or she nonetheless may find it worthwhile—or even financially necessary—to engage in additional illegal activities prior to trial. *See, e.g., United States v. Dumot,* 634 F.Supp. 407, 408 (W.D.Pa.1986) ("[f]acing the lack of legitimate income, [defendant's] temptation to continue to engage in narcotics dealing will be strong" while on pretrial release). Further, even if a voluntary surrender were to evince a defendant's new-found resolve to comply with the law, such a small step would be insufficient to assure a Court that a presumptively dangerous individual had truly turned a new leaf. *See, e.g., United States v. Harris,* 732 F.Supp. 1027, 1033 (N.D.Cal. 1990) ("Although [defendant's] new-found resolve to treat his drug problem and his aunt's willingness to guarantee his bail as a condition of release are laudable, the court finds that [the defendant] has failed to rebut [the] presumption" of dangerousness); *United States v. Rawls,* 620 F.Supp. 1358, 1359 (D.C.Pa.1985) (enrollment in drug rehabilitation program not sufficient to rebut presumption of dangerousness).

Consequently, this Court concludes that Fiandor has failed to satisfy his burden of producing evidence that he poses no threat to the safety of the community. *See United States v. Ortiz–Orona,* 974 F.2d 1346 (table), 1992 WL 207976 (10th Cir.1992) (unpublished opinion) [4] (defendant's voluntary surrender failed to rebut statutory presumption of dangerousness). Pretrial detention was therefore warranted without further showing by the Government.

■ In addition, even assuming that Fiandor's voluntary surrender was enough to satisfy his burden of production, the Government's proffer provided clear and convincing proof of Fiandor's dangerousness. Fiandor's indictment for a drug trafficking crime is strong evidence that he places the community at risk, *United States v. Viera,* 814 F.Supp. 81, 83 (S.D.Fla.1993), as are Fiandor's prior narcotics conviction and his alleged commission of the instant offenses while on parole. *See United States v. Hare,* 873 F.2d 796, 797 (5th Cir.1989); *United*

---

4. The Tenth Circuit Court of Appeals recently permitted citation to its unpublished opinions. *See* "Increased Use of Unpublished Rulings Faulted," *N.Y.L.J.,* August 2, 1994; "Some Opinions May Soon Be Out of Cite," *N.J.Law.,* June 13, 1994.

**1362**

*States v. Williams,* 753 F.2d 329 (4th Cir. 1985).

More damaging than these facts, though, is the nature of Fiandor's alleged criminal activity. Fiandor and his compadres allegedly impersonated law enforcement officers in order to rob residences of drugs and money. If the facts alleged are proven true, it is clear Defendants anticipated possible resistance from individuals residing in the homes they "raided"—including the bogus stash house involved in this case, which Defendants believed may have been guarded by two narcotics traffickers. Defendants went on these risky raids prepared to subdue individuals they encountered through deception or deadly force. Anyone who so carefully prepared to carry out such a crime represents a clear danger to the community.

Accordingly, the magistrate's order denying the Government's request for pretrial detention and permitting pretrial release is VACATED. The Government's request for pretrial detention is GRANTED. The Court directs that the Defendant continue to be committed to the custody of the Attorney General for confinement separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded reasonable opportunity for private consultation with counsel. Upon order of a court of the United States or request of an attorney for the Government, the person in charge of the corrections facility in which the person is confined shall deliver Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding. 18 U.S.C. § 3142(i).